DAVID CRAIG, Respondent, *v.* THE TOWN OF ANDES, Appellant.

A recital in a bond, purporting to have been issued by a town under the act of 1869 (Chap. 907, Laws of 1869) in aid of a railroad company, to the effect that all the necessary legal steps have been taken to comply with the statute, does not estop the town from questioning the validity of the bond, even in the hands of a *bona fide* holder.

The judgment of the county judge, in proceedings under said statute to bond a town, may be questioned for want of jurisdiction.

The only effect of the provision of said statute (§ 2), giving to such judgment and record "the same force and effect as other judgments and records in courts of record," is to relieve the holders of bonds issued under it from proving the proceedings prior to the judgment, and to impose upon the town the burden of proving want of jurisdiction.

Jurisdiction could only be conferred under said act by the presentation of a petition conforming to its requirements ; it confers no jurisdiction upon the county judge to pass conclusively upon the form of the petition, and its sufficiency is always open to inquiry.

The petition of tax payers required must be absolute in form; no power is given to them to make their request conditional upon the location of the road upon a particular route, and a request coupled with such a condition is absolutely void. (RUGER, Ch., J., MILLER and FINCH, JJ., dissenting.)

In proceedings under said act to bond the defendant, about one-fourth of the petitioners attached to their requests a condition that the road should be located upon a specified line, excluding these, there remained much less than a majority either of tax payers or property. The petitions consisted of several distinct papers, but they were treated by the county judge as one petition, and his order was predicated upon them as such ; there was but a single verification thereto. In an action upon coupons attached to the bonds, *held* (RUGER, Ch. J., MILLER and FINCH, JJ., dissenting) that the condition affected the entire petition and rendered it void, and as the defect was apparent upon the face of the

petition the county judge acquired no jurisdiction; and that plaintiff, although a *bona fide* holder, was chargeable with notice of the defect.

*Calhoun* v. *D. & M. R. R. Co.* (28 Hun, 380), limited and distinguished.

*People, ex rel. Hoag*, v. *Peck* (4 Lans. 528), distinguished.

The petition was signed in 1870; the order of the county judge, based thereon, was made prior to the passage of the act of 1871 (§ 1, chap. 925, Laws of 1871), which authorizes conditional petitions. *Held*, that said act had no application; that the sufficiency of the petition was to be determined with reference to the act of 1869.

Also *held*, that the case was not affected by the act of 1870 (Chap. 507, Laws of 1870), defining the powers of commissioners appointed under the act of 1869.

(Argued June 18, 1883; decided October 9, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made at the November Term, 1882, which reversed a judgment in favor of defendant, entered upon the report of a referee, and granted a new trial.

This action was brought to recover the amount of certain coupons alleged to have been cut from bonds issued by defendant, under the act chapter 907, Laws of 1869, in aid of the construction of the Delhi and Middletown Railroad Company.

The material facts are stated in the opinion.

*I. H. Maynard* for appellant. The county judge not having acquired jurisdiction of the proceedings his adjudication is void. (Laws of 1869, chap. 907, § 1, p. 2303; Laws of 1871, chap. 925, § 1, p. 2115; *People* v. *Spencer*, 85 N. Y. 1; *People* v. *Van Valkenburgh*, 63 Barb. 105; *People* v. *Adirondack Co.*, 57 id. 661; 1 Abb. L. Dict. 101, title Association.) The proceedings before the county judge were fatally defective, because a single petition was not presented as a foundation thereof. (Laws of 1869, chap. 907; Laws of 1871, chap. 925, p. 2116; *First Nat. B'k of St. Johnsbury* v. *Town of Concord*, 50 Vt. 257.) The petitions not being verified as required by law the county judge acquired no jurisdiction. (Laws of 1869, chap. 907, § 1; Laws of 1871, chap. 925; *Angel* v. *Town of Hume*, 17 Hun, 374.) The petition was fatally defect-

ive, because it did not allege that it was signed by a majority of the tax payers, etc. (Laws of 1871, chap. 925, § 1, p. 2115; *Town of Wellsborough* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 182; *Ely* v. *Holton*, 15 id. 595; *Gould* v. *Town of Genoa*, 23 id. 437; *Moore* v. *Mansert*, 49 id. 332; 5 Lans. 173; *Falconer* v. *B. & J. R. R. Co.*, 69 N. Y. 491; 7 Hun, 499; *Butler* v. *Palmer*, 1 Hill, 324; *People* v. *Suprs.*, 67 N. Y. 109; *People* v. *Livingston*, 6 Wend. 526; *People* v. *Peck*, 62 Barb. 545; *Wilson* v. *Town of Caneadea*, 15 Hun, 218; *In re Palmer*, 40 N. Y. 561; *DuBois* v. *City of Kingston*, 20 Hun, 500; *Angel* v. *Town of Hume*, 17 id. 374, 379; *Syracuse S'v'gs B'k* v. *Town of Seneca Falls*, 86 N. Y. 317, 323; *People* v. *Sawyer*, 52 id. 296; *People* v. *Allen*, id. 538.) The notice of the hearing published by the county judge was fatally defective in not specifying a place where the hearing was to be had. (*Stewart* v. *Smith*, 17 Wend. 517; *Bloom* v. *Burdick*, 1 Hill, 130; *Brown* v. *Mayor, etc.*, 3 Hun, 685; *People* v. *B'd of Police*, 6 Abb. 162; *Wortman* v. *Wortman*, 17 id. 66; *Cook* v. *Farren*, 34 Barb. 95.) The adjudication of the county judge never became binding and operative, because it was never entered or judgment-roll made up and filed in the office of the county clerk. (*Williams* v. *Western Union Tel. Co.*, 1 Civ. Pro. R. 194; *Sheridan* v. *Linden*, 81 N. Y. 182; 1 C. & H. Notes [2d ed.], 799, 1063, 1072; *Croswell* v. *Byrnes*, 9 Johns. 287; *Baker* v. *Kingsland*, 10 Paige, 366; *Lansing* v. *Russell*, 3 Barb. Ch. 325; *Essex Co. R. R. Co.* v. *Town of Lunenburgh*, 49 Vt. 143; *Morrison* v. *Inhabitants of Bernards*, 36 N. J. L. 219.) Every person dealing with the bonds was chargeable with notice of the defects in them. (*Cagwin* v. *Town of Hancock*, 84 N. Y. 532; *Town of Venice* v. *Woodruff*, 62 id. 463; *People* v. *Mead*, 36 id. 224; *Starin* v. *Town of Genoa*, 23 id. 439; 36 N. J. L. 219.) As to all facts necessary to give a court of record jurisdiction the judgment of the court is simply presumptive evidence of the existence of those facts. (*Bosworth* v. *Vandewater*, 53 N. Y. 597; *Potter* v. *Merchants' B'k*, 28 id. 641; *Foote* v. *Stevens*, 17 Wend. 483; *Hart* v. *Leixas*, 21 id. 40; *Town of Springport* v.

*Teutonia S'v'gs B'k*, 75 N. Y. 397.)   A county judge cannot confer jurisdiction upon himself by deciding that he has it. (*Roderigas* v. *E. R. S'v'gs Institution*, 63 N. Y. 464; *Chapman* v. *Phœnix Nat. B'k*, 5 Abb. N. C. 118; *Morrow* v. *Freeman*, 61 N. Y. 517; *Nat. B'k of Chemung* v. *City of Elmira*, 53 id. 53; *Rusher* v. *Sherman*, 28 Barb. 36; *Ferguson* v. *Crawford*, 70 N. Y. 253, 256–7, 259–260; *People* v. *Spencer*, 55 id. 1; *Town of Wellsborough* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 182; *Town of Venice* v. *Woodruff*, 62 id. 462; *Cagwin* v. *Town of Hancock*, 84 id. 759; *Town of Springport* v. *Teut. S'v'gs B'k*, 75 id. 377; *People* v. *Hurlburt*, 46 id. 110; *People* v. *Smith*, 45 id. 772; *People* v. *Mead*, 36 id. 221.)   The county judge could only appoint persons who were freeholders' commissioners. (Laws of 1869, chap. 907, § 3, p. 2305.)   Defendant is not estopped by the payment of the interest on the bonds or a small portion of the principal. (*Weismer* v. *Village of Douglass*, 64 N. Y. 91; *Hills* v. *Peekskill S'v'gs B'k*, 26 Hun, 161; *N. Y. & O. M. R. R. Co.* v. *Van-Horn*, 57 N. Y. 473; *Chapley* v. *Abbott*, 42 id. 443; *Town of Springport* v. *Teut. S'v'gs B'k*, 84 id. 403; *Horton* v. *Town of Thompson*, 71 id. 513.)

*Barna Johnson* for respondent.   The petition as presented and filed was a sufficient compliance with the statute. (Laws of 1869, chap. 907; *People* v. *Spencer*, 55 N. Y. 1; *Angel* v. *Tn. of Hume*, 383.)   The judgment and adjudication of the county judge is conclusive upon defendant. (*Tn. of Venice* v. *Murdock*, 92 U. S. 494; *Humbolt Township* v. *Long*, id. 642; *Marcy* v. *Township of Oswego*, id. 637; *Tn. Coloma* v. *Eaves*, id. 494; 96 id. 271, 278; 94 id. 267; 16 Wall. 644; *Burhans* v. *Van Zandt*, 7 N. Y. 523; *Stilwell* v. *Carpenter*, 59 id. 414; *Smith* v. *Nelson*, 62 id. 286; *Chapman* v. *Phœnix Nat. B'k*, 85 id. 443; *Cooke* v. *Halsey*, 16 Peters, 71; Abbott's Trial Evidence, 829, 545, 546; 1 Wait's L. and Pr. 857; 5 Sandf. 134; 20 N. Y. 298; 1 Duer, 79; 12 How. 50; *Springport* v. *Teutonic Savings B'k*, 84 N. Y. 403, 410; 52 id. 538, 542; *People* v. *Smith*, 45 id. 772, 777.)   The

county judge had jurisdiction to proceed on May 22, 1871, upon the papers then before him, to make the final adjudication, and the amendment of the act of 1869, on May 12, 1871, did not deprive him of that power. (*Tn. of Willsborough* v. *N. Y. & O. R. R. Co.*, 76 N. Y. 182; *Ely* v. *Holton*, 15 id. 595; 17 Hun, 379, 380; 86 N. Y. 322.) The purchaser of bonds may rely upon the recitals therein, except the legislative authority for the issue of the bonds. (16 Hun, 285; 94 U. S. 104, 266; 92 id. 484.)

DANFORTH, J. The plaintiff alleged the performance of the statutory conditions on which alone the defendant could be made liable to pay the bonds or coupons in question, but in the opinion of the trial court so failed in proof that it gave judgment against him upon the ground that those instruments "were issued without authority of law," and were void. This has been reversed by the Supreme Court, and a new trial granted, but upon what ground does not appear. The respondent, however, seeks to maintain the order of reversal upon the grounds, *first*, that the bonds recite on their face "that all necessary legal steps and proceedings have been taken to comply with the laws under which they were issued; *second*, that the judgment and adjudication of the county judge of May 22, 1871, is absolutely conclusive upon the defendant; *third*, that the statute was in fact complied with."

It would be a sufficient answer to the first position that the recitals in the bonds are not in the form above suggested.

It is, however, unnecessary to discuss this question, for we have heretofore refused to give that effect to the recital in similar bonds, and have repeatedly held that one who takes such instruments, although in good faith, must see to it that they are authorized by the statute under which they purport to have been issued. (*Town of Lyons* v. *Chamberlain*, 89 N. Y. 585; *Cagwin* v. *Town of Hancock*, 84 id. 532.)

The next proposition is of a more serious character. The statute (Laws of 1869, vol. 2, p. 2303, chap. 907, §§ 1, 2) enables a majority of its tax payers whose names appear upon the

last preceding assessment-roll of the town, as owning or representing a majority of the taxable property within its corporate bounds, to set in motion by their petition proceedings which, if successful, would cause the town to bond itself in aid of the railroad company named therein, and confers upon the county judge authority to adjudge and determine whether, as alleged in their petition, they did constitute such majority of tax payers representing such majority of taxable property, and if so, cause his determination to be entered of record, and gives to such judgment and the record thereof " the same force and effect as other judgments and records in courts of record in this State." This determination has been made and is relied upon by the plaintiff, but on the part of the defendant it is insisted that the judgment of the county judge is null and void for want of jurisdiction. This question it can fairly raise. The general doctrine is well settled that the jurisdiction of any court exercising authority over a subject may be inquired into in any court where the proceedings of the former are relied on and brought before the latter by the party claiming the benefit of such proceedings. This rule was laid down in *Elliott* v. *Peirsol* (1 Pet. 328), and cited with approval by this court in *Chemung Canal Bank* v. *Judson* (8 N. Y. 254). So far as this question is concerned the only effect of the statute (§ 2, *supra*) was to relieve the plaintiff from the necessity of showing, step by step, the proceedings which led up to the judgment, and place upon the defendant the burden of showing that no jurisdiction in fact existed in the county judge. The plaintiff, however, did not avail himself of this privilege. He treated the judge as an inferior tribunal and undertook to show the facts relied upon to give him jurisdiction. He left no room, therefore, for the presumption which would otherwise have required evidence from the defendant to remove. As the case stood it could show, if possible, not that the judgment was erroneous, but that it was void. In this it was properly successful, if the conditions on which that jurisdiction depended had not been fulfilled. (*Davidsburgh* v. *Knickerbocker L. Ins. Co.*, 90 N. Y. 526; *Ferguson* v. *Crawford*, 70 id.

253 ; 26 Am. Rep. 589 ; *People, ex rel. Tweed,* v. *Liscomb,* 60 N. Y. 568 ; 19 Am. Rep. 211 ; *People, ex rel. Rogers,* v. *Spencer,* 55 N. Y. 1.) These cases go upon the ground, now well established, that the record, whether of a superior or an inferior court, is never conclusive as to the existence of a jurisdictional fact, and that a defendant may show a want of jurisdiction although the record avers the contrary. (*Davis* v. *Packard,* 6 Wend. 327 ; *Bloom* v. *Burdick,* 1 Hill, 130 ; *People* v. *Cassels,* 5 id. 164 ; *Ferguson* v. *Crawford, supra.*) And quite applicable to the present inquiry is the declaration of PAIGE, J., in *Hard* v. *Shipman* (6 Barb. 621), cited with approval in *Ferguson* v. *Crawford* (*supra*), " that if the court had no jurisdiction, it had no power to make a record, and the supposed record is not in truth a record." Had the county judge then jurisdiction ? This could only be conferred by the presentation of a petition conforming to the statute. (*Town of Wellsborough* v. *N. Y. & O. R. R. Co.,* 76 N. Y. 182 ; *People* v. *Spencer, supra.*) Such petition would be absolute in form, and express, *first,* a desire that the town be bonded in a sum named ; *second,* directions for the investment of the bonds or their proceeds in a specified security of the railroad company named in the petition. (*People, ex rel. Rogers,* v. *Spencer, supra.*) The petition presented to the county judge and on which he acted is not within these limits. Thirty-seven petitioners, representing in the assessment list property valued at $46,250, insert a " condition that said road is located by Fish lake and Shavertown ; " six petitioners, representing $12,150 of property, insert a condition that it " be located by Fish lake and Shavertown or village," and ten others, representing $13,050, that it be located " by Shavertown and Lumberville." These conditional petitioners constitute about one-fourth of all the petitioners and own more than that proportion of the property owned by all the petitioners, and excluding them there would remain on the petition much less than a majority either of tax payers or property. But they were not excluded.

The county judge predicated his order upon them, treated all the papers as constituting one petition, and filed and made

them one record. The conditions, therefore, affect the entire
petition. The statute confers no power upon the tax payer
to indicate or secure a railroad location to suit his convenience
or benefit his property, but, for the advantage of all the town,
enables him, as one of the majority, to appropriate its money
to a railroad already organized, and whose line should have
been determined according to the unbiased judgment of its
managers. This is not a mere formal or technical condition.
The General Railroad Act (Laws of 1850, chap. 140), into which
the Bonding Act of 1869 (Laws of 1869, chap. 907) is introduced
by amendment, permits an entry by a railroad corporation
upon the lands of any owner against his consent and without
compensation, for the purpose of making such examination and
survey "as may be necessary to the selection of the most
advantageous route," and requires a map and profile of the
route intended to be adopted, to be filed, and notice of such
filing given to the occupant of the land traversed by the pro-
posed road. And this, if objected to, is to be either altered or
confirmed as may, in the opinion of the Supreme Court, "be
consistent with the just rights of all parties and the public."
It is to a road thus located, after the exercise of power over the
property rights of individuals which nothing but public
necessity could warrant, by parties indifferent between various
sections of a town, or by judicial action, that the attention of
the tax payers is to be directed and their favor obtained in
view of a public benefit to the municipality. This would be
interfered with, or wholly defeated, by an arrangement depend-
ing upon successful solicitation of a property owner whose con-
sent was given on the express condition that his preference
should be followed. A petition that aid be extended to a rail-
road company, provided a certain thing is done, is very different
from a simple petition that aid be extended to that company.
It must also be borne in mind that this petition is to be
addressed to the county judge, and that he has no power to
accept or reject the condition, consequently none to make the
petition effective. It has already been said by this court "that
the presentation of a proper petition lies at the basis of his

jurisdiction," and that if any facts, required to be stated, are omitted, all the other proceedings are fatally defective. In *People, ex rel. Rogers,* v. *Spencer* (*supra*), the petition failed to state that the railroad corporation named was a domestic one, and on that ground the court reversed the adjudication of the county judge. In *People, ex rel. Green,* v. *Smith* (55 N. Y. 135), the proceeding was under the act of 1871, which required the petition to show, in addition to the facts called for by the act of 1869 (*supra*), that the petitioners were a majority of the tax payers, "not including those taxed only for dogs, or highways only," and it was held that by reason of this omission the county judge acquired no jurisdiction of the proceedings, and that he could not, of his own motion, dispense with the performance of a condition precedent to the exercise of the authority conferred by the act. This decision was followed in a much later case (*Town of Wellsborough* v. *N. Y. & C. R. R. Co.,* 76 N. Y. 182), and for the same defect in the petition it was held that the county judge acquired no jurisdiction and that his order and subsequent proceedings were void. It was there also declared to be the settled doctrine of the court that the proceedings for town bonding in aid of railroads will not be sustained, "when there has been a failure to comply strictly with the statutes conferring the authority."

The desire expressed in the petition is not within the purview of the act (Laws of 1869, *supra*). The petitioners give no absolute consent. It is qualified or conditional. We desire, they say, the company to be aided, provided, or on condition, that the line of the road is as we indicate. So far as the petitioner himself is concerned, the right to tax his property is clogged with the condition that the road shall run as he directs, and is entirely inconsistent with the right to create a tax in aid of a road constructed without reference to his wish, and with regard only to the public good. This seems plain enough on any principle applicable to the construction of statutes, but it is also within the authorities, which uniformly require that every statutory condition, precedent to the taking, by any mode, of private property for public use as against the

will of the owner, shall be strictly complied with. (*Dyckman* v. *Mayor, etc.*, 1 Seld. 439; *N. Y. & B. R. R. Co.* v. *Godwin*, 12 Abb. Pr. [N. S.] 21; *In re Boston H. T. & W. R. Co.*, 79 N. Y. 71.)

In proceedings under certain acts giving a materialman or mechanic a lien "with the written consent of the owners," it was held that the consent must be absolute and not conditional, and that such consent, when coupled with the provision that the repairs should be at the cost of the tenant, was not an absolute consent, and was insufficient to authorize a lien upon the building. (*McClintock* v. *Criswell*, 67 Penn. St. 183; *Boteler* v. *Espen*, 99 id. 313.)

In *Butternuts and Oxford Turnpike Co.* v. *North* (1 Hill, 518), the defendant subscribed for stock in plaintiff's road, "Upon condition that said road shall be laid by Fayette village and Guilford Centre." The commissioners for securing subscriptions obtained several signatures to this, and also to another, absolute in its terms. Upon suit brought the court held the subscription did not bind the defendant, saying subscriptions for stock, under the act there in question (1 R. S. 578), must be absolute, adding, in words applicable here, "this act confers no power to make conditions, and to allow such a thing would be contrary to public policy. Divers men would perhaps have their divers routes, and endeavor, improperly, to influence the course of the road." This case was cited and applied by this court in *Fort Edward and Fort Miller Plank Road Co.* v. *Payne* (15 N. Y. 583), where the condition of subscription was that the road should be extended to a point named by the subscriber. The subscription was held void, as tending to promote private interest at the sacrifice of the public convenience, for which, alone, the formation of such corporations was authorized.

In *Troy and Boston R. R. Co.* v. *Tibbits* (18 Barb. 298) a conditional subscription to stock in a railroad corporation, organized under the General Railroad Act, was held void, Judge WRIGHT saying: "The law of 1848 confers no power to make conditional subscriptions, and such a thing is contrary to public

policy." So, in *People, ex rel. Averill,* v. *Adirondack Co.* (57 Barb. 656), the General Term of the third department held the order of the county judge, made under the act now before us, to be void, because "it was based upon a petition that was conditional and not absolute," requiring the money raised to be used in a particular county. These cases apply here. The petition is not absolute. The order is based upon it, and the statute, by compliance with which, alone, the town can be bound, has not been followed. This defect was apparent upon the face of the petition, and it follows, both that the county judge had no jurisdiction to entertain the proceedings — consequently, none to make a record or judgment — and that the plaintiff is affected with notice thereof. It is also to be considered that the statute by which the action of the county judge is directed confers upon him no power to pass conclusively upon the form of the petition. Its sufficiency is always open to inquiry. His judgment can be called for upon two points only: *First,* whether the petitioners do represent a majority of tax payers, and *second,* a majority of the taxable property. (*People, ex rel. Rogers,* v. *Spencer, supra.*)

The conclusion reached by us upon the point already considered renders it unnecessary to discuss other questions raised by the appellant, and also answers the claim of the plaintiff that the town is estopped from questioning the validity of the coupons, for, as they were issued without authority and in violation of law, there is, in respect to them, nothing in the circumstances of the case to prevent the defendant from availing itself of that defense. (*Cagwin* v. *Town of Hancock, supra.*) The learned counsel for the respondent relies upon the decision in *Calhoun* v. *Delhi and Middletown Railroad* (28 Hun, 380). It was in equity and involved the allowance of an injunction to restrain the payment of bonds issued under the proceedings above referred to, and to have them adjudged void and canceled. Many propositions are discussed by the learned judge in the opinion there given, which we do not find it necessary now to determine. Nor is the correctness of that decision in question here, for a court of equity might, in its

discretion, refuse to interfere, and leave the party to his legal rights.

But so far as the question relates to the form and validity of the petition, the views of the learned judge are at variance with those above expressed, and we cannot agree with them. They are in substance, first, that the condition inserted in the petition was a modification which the petitioner had a natural right to make; second, that it is expressly authorized by the act of 1871 (Laws of 1871, chap. 925, § 1), which declares that the petition may be absolute or conditional; third, because as stated upon argument before him, the railroad as a fact was located by Fish creek and Shavertown, and so he says "no ground of complaint on that score exists." The first and third might deprive the party consenting of any favor from a court in equity, but cannot be accepted as equivalent to the positive consent of the tax payer, upon which alone the jurisdiction of the county judge could be invoked. The whole proceeding is in violation of natural right. That leaves to each person control over his own property without regard to the wishes of his neighbors, however numerous, and the statute which permits their interference is, as we have already held, "subversive of the just rights of the minority." (*Town of Wellsborough* v. *N. Y. & O. R. R. Co.*, *supra*.) Whoever, therefore, claims an advantage from it must see that each step required by the statute is taken in the manner and at the time prescribed. (*People* v. *Spencer and Town of Wellsborough* v. *N. Y. & O. R. R. Co.*, *supra*.) In these cases although the fact omitted from the petition was supplied by evidence, the proceedings failed because the statute was not complied with.

As to the other ground: The statute of 1871 (*supra*) has no application. The petition was signed in 1870 and presented to the county judge and filed by him on the 6th of May, 1871; on that day he made the order which lies at the basis of these proceedings, and it must be sustained, if at all, upon the jurisdiction thus acquired. The act of 1871 was not passed until May 12, 1871. It cannot aid this case. If it is applied, however, the proceedings would be defective, for a reason supplied

by that act itself. Under it persons taxed for dogs or highways only are excluded from the number of those who may be counted as petitioners, and that they were excluded must appear in the petition and judgment. (*People* v. *Smith, supra.*) This was not necessary under the act of 1869, and in that respect the petition is good; as one under the act of 1871, it is not good. But as the proceedings were commenced under the act of 1869, the sufficiency of the petition must be determined with reference to that act, without regard to the subsequent amendment. (*Ely* v. *Holton*, 15 N. Y. 595; *Syracuse Savings Bank* v. *Town of Seneca Falls*, 86 id. 317; *People, ex rel. Peake*, v. *Board of Supervisors*, 43 id. 130.) This amendment does, however, indicate the understanding of the legislature of the law as it stood before the passage of the act, and the great change in phraseology shows that in their opinion a conditional petition was not authorized by the prior act of 1869, *supra*. (*People, ex rel. West. F. I. Co.*, v. *Davenport*, 91 N. Y. 574; Hardcastle on Statutes, 67.) It is true the petition consists of several distinct · papers, but, as already stated, they were acted upon by the county judge as constituting a single instrument. Indeed no part could have been rejected. A proper petition was a condition precedent to his jurisdiction— that is, to his right or power to entertain the matter at all— and the papers presented could only be taken as presented and as a whole. The petition is also required to be verified. That too is a jurisdictional circumstance. There was but a single verification, and looking at the case in a manner most favorable to the plaintiff, the affiant referred to the whole body of papers as " a petition." If, therefore, we reject the portions which contain the conditions, we take away at the same time the verification, so that in either aspect the petition fails to show that the county judge had jurisdiction to entertain the proceeding, and it could not be acquired by any adjudication of his own. The petition itself must be looked to in order to determine whether he had in fact jurisdiction to take proof of the facts set forth therein "as to the number of tax payers

joining in such petition and as to the amount of taxable property represented by them."

Our attention is also directed to the act of 1870 (Chap. 507, vol. 2, Session Laws of 1870) entitled "An act to define the powers of commissioners appointed under chapter 907 of the Laws of 1869, binding municipalities to aid in the construction of railroads." Its provisions do not seem to aid the plaintiff or have any tendency to relieve the case of the difficulty I have been considering. Its title indicates its object, and the act itself clearly relates to a different matter from the one on which the difficulty arises. "It shall be competent," it declares, "for any corporation, in aid to the construction of whose railroad, bonds shall have been authorized to be issued by any municipal corporation" * * * * * "to enter into any agreement with the commissioners appointed to issue said bonds, limiting and defining the times when, and the proportion in which, said bonds or their proceeds shall be delivered to said corporation, and the place or places where, and the purposes for which, such bonds or their proceeds shall be applied or used, and any such agreement in writing, duly executed by such corporation, and a majority of such commissioners, shall * * * * be valid and effectual." It confers a new power upon these officers, but I am unable to see that it relieves the petition of the defect by reason of which it is ineffectual for any purpose, even to authorize the appointment of commissioners. It gives no power to locate a road, but the right to designate upon what portion of a road already located the bounty of the town shall be applied. Nor can the case of *The People, ex rel. Hoag,* v. *Peck* (4 Lans. 528), to which also reference is made, help out the respondent. The petition then before the court was presented under the act of 1871 (*supra*), and was thought to be authorized by it, and the remarks of the court as to the probable effect of the act of 1870 can hardly be deemed to express even the opinion of the learned judge who spoke for the court, for they were made as suggestions merely, and are not consistent with the principle then fully established by this court and referred to with approbation in the

case cited, by which nothing can be presumed or intended in favor of these proceedings, and which requires the party endeavoring to maintain them to show that the terms of the statute have been in all essential particulars complied with. That compliance has not been shown. The petition is fatally defective. It warranted no action by the county judge, and we are constrained to say that the objection of the defendant was good, and the appeal well taken.

It follows that the order appealed from should be reversed, and the judgment entered on the report of the referee affirmed, with costs.

FINCH, J. (dissenting). I do not concur in the conclusion which the majority of the court have reached, nor in the reasoning upon which that conclusion is founded. The town of Andes disputes the validity of its bonds, after having steadily paid the interest upon them for a period of about ten years, after having also paid a part of the principal, and when innocent persons, deceived by the appearance of validity, have largely become their owners. The adjudication of the county judge, before whom all parties were summoned, and given an opportunity to be heard, has remained unchallenged during all this period of time, but it is now discovered to have been without jurisdiction. The ground of this conclusion is a single one out of many alleged, and to that one alone it now becomes necessary to direct attention. Briefly, though I trust fairly, stated it is this: that under the statute of 1869 a petition, "absolute in form," was requisite to the jurisdiction, and that the one presented was not "absolute in form," because one-quarter of the signers added to their consents conditions that the railroad be located by a particular route.

Now it is to be observed that the statute nowhere, either in terms or by necessary implication, prescribes the "form" of the petition. The language of the act is not that the majority of the tax payers must signify their desire *without condition annexed.* No such words are in the act. The legislature has not so declared. The requirement is argued into it as an

unwritten necessity of the petition from the alleged fact that conditional consents are ineffective and unavailing, and that the county judge could not render them operative; and then jurisdiction is denied in the present case because the evidence shows that without the conditional signers a majority in number and amount were not represented on the petition. This last suggestion seems to me indefensible, and should be considered first in order to remove from the discussion what may obscure and confuse it.

, The question of jurisdiction arises solely upon the paper presented. Nothing else, no other evidence, no after-ascertained facts are before the officer. Neither he nor we have any right to mix up that question with facts afterward proved. The fact advanced and relied upon to justify a denial of jurisdiction depends upon the number of tax payers in the town as represented on the last preceding tax-roll. But that tax-roll was not before the county judge on the presentation of the petition. The officer could not judicially know how many names were on the tax-roll, how many tax payers were in the town, or what number of signers constituted a majority of the unknown whole number. He could not know and had no right to know; and to argue him out of his jurisdiction, by reference to what is said to have been proved when his jurisdiction was assailed on the trial in the present case, is to make the jurisdiction depend, not upon the face of the petition as presented, not upon the sufficiency of its allegations, but upon their truth as matter of fact. It is as if one should demur to a complaint on the ground that it did not state facts sufficient to constitute a cause of action, and then seek to sustain the demurrer on appeal in this court by showing that, in an after action, it was proved that the facts pleaded were not true. The jurisdiction of the county judge depended upon the sufficiency of the allegations and not upon their truth; upon the paper presented, not upon the facts behind it. What possible protection could the adjudication of the county judge give if its correctness could always be assailed under the guise of an inquiry into a jurisdictional fact? The statute is not perhaps

very accurately or happily expressed, but its meaning is not doubtful. Jurisdiction attaches whenever a petition is presented, signed by such a number of tax payers as may constitute the required majority, and sworn to be such by one of the signers. That makes a *prima facie* case. That protects against an absurd or idle application. Thereupon the duty of the county judge begins, and he is left to decide whether the asserted majority is, in truth, the real and lawful majority. This construction was recognized in *People, ex rel. Rogers*, v. *Spencer*, 55 N. Y. 1, cited in the prevailing opinion. The language of the court was carefully phrased so as to avoid giving countenance to the idea that jurisdiction depended in any manner upon the truth of the allegations.

These views clear the way to what I conceive to be the true question to be considered, which is the sufficiency of the petition on its face, and that alone. There were about two hundred signers in all. Fifty or sixty of them signed upon condition; one hundred and fifty absolutely and without condition. The county judge could not judicially know that the one hundred and fifty were not a majority in number and amount of the whole number of tax payers on the assessment-roll. They, at least, signed absolutely. If the other fifty names had not been signed at all, the petition signed by the one hundred and fifty would assuredly have given jurisdiction. The proposition then comes down to this : that the consent of the one hundred and fifty is annulled by the presence on the same paper of the names of fifty persons who did not legally consent at all. To my mind the suggestion is a very serious one, because necessarily the same result would follow if but one name had a condition attached, and a case might arise where, of five hundred tax payers in a town, four hundred and ninety-nine signed absolutely and one upon condition, and because of that one consent which was *not* a consent, legally considered, the bonding would be void for want of jurisdiction. It seems to me that if, as is contended, the fifty who did not sign absolutely did not consent, then simply the petition must be treated as not signed by them at all. The condition which

annulled their consent could have no greater force than if they had withheld their names entirely, and in that event jurisdiction would have been obtained. I cannot help regarding it as an unsound proposition that the lawful application of the one hundred and fifty is vitiated because fifty more undertook to join in, but failed legally to express their consent. That failure might or might not become important upon the hearing after jurisdiction obtained ; for the statute itself permits, upon that hearing, tax payers, who did not join in the petition, to come in before the court and signify their consent, and make that consent effective. And this provision is very strong proof that the county judge *is not barred from jurisdiction to inquire,* because he sees on the face of the paper a mode of signature which may or may not affect the ultimate result of his inquiry.

But I have not as yet done full justice to the doctrine of the majority. It has another phase, which seems to me the only one having any real importance. It is claimed that the petition asserts merely, and verifies merely, that the whole number of signers constitute a majority of the tax payers; and since some of them signed ineffectively and cannot be counted, it follows that the petition does not allege nor verify that the remainder still constitute a majority. This is a technical and artificial construction of the language of the petition, and impresses upon it a meaning which does not at all belong to it. If it be a sound construction it probably destroys every bonding petition which has ever been presented, since it is difficult to imagine that any one application has been made which did not contain some one defective, or invalid, or ineffectual consent. The question, therefore, assumes a very grave importance. The position of my brethren with whom I differ rests upon the words in the petition " the undersigned," which are assumed to mean " the whole of the undersigned," or all of them taken together, without rejection of a single name. No such meaning belongs to the phrase as used in the petition, nor was it within the contemplation of the applicants or the affiant. The latter did not mean to verify that persons desired to bond the town whose signature, with a condition, showed

that they did not legally desire it at all. What he did mean, and what he must be held to have verified, is, that enough of "the undersigned" had consented, that is, effectively consented, to constitute a majority in number and amount of the tax payers. He swears simply, and the petition avers, that there, on the paper, are the names of a majority who desire the bonds to be issued. The petition does not say, and was not required to say, how large a majority. It does not purport that *every* name attached is essential to the existence of such majority. It does not warrant, at the peril of a total failure of the application, that there is no name among "the undersigned" ineffectively signed. It does not assert that there is a bare majority which will not admit of the rejection of a single name. What the petition asserts, and what the affiant verifies is, that there, before the county judge, lie the consents of a majority of the tax payers; that a majority have consented, have expressed their desire, and have done so effectively. No other construction is either reasonable or just, and the technical one, asserted after ten years of silence and payment by the town, should be rejected.

But I go further even than this. I am satisfied that upon the technical construction, which I reject, the allegations of the petition and of the affiant were sufficient. The county judge had no right to assume that the desire of the fifty-three signers to bond the town was annulled or effaced by the condition annexed, and that these signatures were not effective, and could not be counted. Let it be steadily borne in mind that the precise question here is whether the petition gave to the county judge jurisdiction to *institute an inquiry*. When he made his final order the act of 1871 was in force, and the conditional desires were lawful and could be effectively counted, so that what transpired six days before that act took effect was that the county judge received the petition, and gave the required notice that he should proceed to inquire into its truth. Had he jurisdiction to institute that inquiry is, therefore, the exact question before us. I maintain that, at that point of the proceeding, the county judge had no right to reject the names of

the fifty-three conditional signers as ineffective and invalid, nor have we any such right on this appeal. Thirty-seven persons on one paper added " on condition that said road is located by Fish lake and Shavertown." Six more added the same condition, appending only after the word "Shavertown," the words "or village." And ten more said "above *conditions* shall be null and void unless said road shall be located by Shavertown and Lumberville." The word " conditions" I am ready to concede is a misprint for, or at least means " consents." Now, as this petition, treated as a whole, lay before the county judge, I insist that it *was* " absolute in form." As signed by the one hundred and fifty it was certainly so. The conditional signers were on separate papers, and added to the absolute form a qualifying condition. But this qualification affected only their individual signatures, and not at all the averment of the petition, or the scope of the verification. The legal effect was the same as if there had been but one paper, absolute in form, which the whole two hundred had signed, but fifty-three signatures had conditions annexed to their individual names. The consequence would be to affect the validity of those signatures, but not the absolute averment of the petition, or assertion of the verification. These would still allege that the undersigned constituted a majority and desired the bonding, that is, absolutely desired it. The county judge might think the averment untrue on observing the conditional signatures, but for the purpose of jurisdiction to inquire, the question of truth or falsity was not before him. The averment of an absolute desire by the signers constituting a majority was there, and no refinement can argue it out. Whether it was true or not by reason of conditional signatures was one of the very questions to be investigated after inquiry begun. Indeed, with the paper before him, the county judge could not even say that the conditional signatures did not express an absolute desire for the issue of bonds in aid of the railroad, and operate as absolute consents to such issue. With nothing before him but the paper and its verified averments had he a right to assume, or can we decide that it was his duty to assume, that the condi-

tions were not already performed when the consents were signed, and so the consents were not in fact absolute ? For a condition already performed in no manner qualifies the consent. In such event the consent is absolute the instant it is given. If I should follow the example set by the prevailing opinion, and resort to the evidence on this trial for information, I should discover that the railroad was in fact located on the precise line indicated by the conditions, and nothing appears anywhere to show that it was not so located at the very moment the conditional signers appended their names, they not having seen the map filed and knowing nothing of the exact alignment. But without doing what I hold to be improper, it is still true that when the county judge was presented with the petition and asked to enter upon the inquiry authorized by law, he had no right to assume that the conditional signatures were not in truth absolute, that the condition had not been performed already, and so was extinguished and did not qualify the consents. The petitioners asserted that they all consented, or rather, following the precise phrase of the statute, that they all desired the creation and issue of the bonds. Their allegation gave jurisdiction, since the county judge could not say, in advance of inquiry and proof, that every signature was not the expression of an absolute desire; since he could not know that the condition was unperformed; since it was the right of the fifty-three to insist that they should be counted, and to prove the facts on the hearing which should establish that right. The officer could not say as matter of law that those signatures were ineffectual to set in motion a judicial inquiry whether in fact a majority had legally consented; for I think it not at all doubtful if the act of 1871 had never been passed, but it was proved on the hearing that when the petition was presented the railroad company had already actually located their line in accordance with the alleged conditions, utterly uninfluenced and unaffected by them, because not then in existence, and so without any question of public policy to intervene, that in such case the entire consents could be counted as all absolute, un-

qualified and dependent upon nothing in the future for their efficacy.

Upon our consultation over this case I expressed the opinion that the act of 1870 legalized conditions, and that the suggestion of Judge DANIELS to that effect in *People, ex rel. Hoag, v. Peck* (4 Lans. 528) was correct. I still think so, but prefer, without discussing that question, to put my dissent upon the broader grounds which have been stated.

I think the order of the General Term was right and should be affirmed.

RAPALLO, ANDREWS and EARL, JJ., concur with DANFORTH, J.; RUGER, Ch. J., and MILLER, J., concur with FINCH, J.

Order reversed and judgment affirmed.