## ANDES *v.* ELY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

No. 295. Argued April 17, 18, 1895. — Decided May 20, 1895.

*Lyons* v. *Munson*, 99 U. S. 676, affirmed to the point that under c. 907 of the laws of New York for 1869, the county judge was the officer charged by law with the duty to decide whether municipal bonds could be legally issued in payment of subscriptions to railroad stock, and that his judgment was conclusive till reversed by a higher court.

*Orleans* v. *Platt*, 99 U. S. 684, affirmed to the point that such a judgment could not be collaterally attacked.

These judgments are not affected by *Craig* v. *Andes*, 93 N. Y. 405, as that case has since been held by the Court of Appeals of New York to have been a collusive case, and not to stand in the way of a reëxamination.

The attaching a condition to his signature by a petitioner under that statute of New York does not necessarily vitiate it.

One who contracts with a corporation as such cannot afterwards avoid the obligations so assumed by him on the ground that the supposed corporation was not one *de jure*.

If the county judge in a notice issued by him under that act fails to specify the place at which the hearing on the petition will be had, it will be presumed that his regular office is the place intended for it.

Statement of the Case.

When municipal bonds issued in payment of a subscription to railroad stock recite on their face that all necessary steps have been taken to justify their issue, the municipality is estopped from showing the contrary in an action brought by a *bona fide* holder to enforce them.

A town, under the laws of the State of New York, is a corporation, so far as respects the making of contracts, the right to sue, and the liability to be sued.

On September 1, 1871, the town of Andes, in the county of Delaware, State of New York, issued ninety-eight thousand dollars of its bonds in payment of a subscription to the capital stock of the Delhi and Middletown Railroad Company, and received in exchange therefor stock of said company to an equal amount. The recitals in the bonds were as follows:

" Issued by virtue of an act of the legislature of the State of New York entitled 'An act to authorize the formation of railroad corporations and to regulate the same,' passed April 2, 1850, and an act to amend an act entitled An act to authorize the formation of railroad corporations and to regulate the same, passed April 2, 1850, so as to permit municipal corporations to aid in the construction of railroads, passed May 18 (1869), 'sixty-nine, three-fifths being present."

" These acts authorize any city or town, except in the counties of New York, Kings, Erie, Greene, Albany, Westchester, Ontario, Seneca, Yates, Onondaga, and Niagara, to subscribe to the stock of any railroad corporation formed in pursuance of said acts, and these acts authorize the town of Andes to subscribe to the stock of the Delhi and Middletown Railroad Company and to issue town bonds in payment thereof, all necessary and legal proceedings having been taken and had under said acts."

The act of 1869, referred to in these recitals, (Laws of New York, 92d Sess., 1869, p. 2303,) contains these provisions:

" SEC. 1. Whenever a majority of the taxpayers of any municipal corporation in this State, whose names appear upon the last preceding tax list or assessment role of said corporation as owning or representing a majority of the taxable property in the corporate limits of such corporation, shall make application to the county judge of the county in which such

corporation is situated, by petition verified by one of the petitioners setting forth that they are such a majority of tax-payers and represent such a majority of taxable property, and that they desire that such municipal corporation shall create and issue its bonds to an amount named in such petition, (but not to exceed twenty per centum of the whole amount of taxable property as shown by said tax list and assessment roll,) and invest the same or the proceeds thereof in the stock or bonds (as said petition may direct) of such railroad company in this State as may be named in said petition, it shall be the duty of said county judge to order that a notice shall be forthwith published in some newspaper in such county, or if there be no newspaper published in said county, then in some newspaper printed in an adjoining county, directed to whom it may concern, setting forth that, on a day therein named, which shall not be less than ten days nor more than thirty days from the date of such publication, he will proceed to take proof of the facts set forth in said petition as to the number of taxpayers joining in such petition, and as to the amount of taxable property represented by them."

"Sec. 2. It shall be the duty of the said judge at the time and place named in the said notice to proceed to take proof as to the said allegations in said petition; and if it shall appear satisfactorily to him that the said petitioners, or the said petitioners and such other taxpayers of said town as may then and there appear before him and express a desire to join as petitioners in said petition, do represent a majority of the taxpayers of said municipal corporation as shown by the last preceding tax list or assessment roll, and do represent a majority of the taxable property upon said list or roll, he shall so adjudge and determine and cause the same to be entered of record. And such judgment and the record thereof shall have the same force and effect as other judgments and records in courts of record in this State."

The bonds were issued by virtue of the following proceedings: On May 6, 1871, a petition of certain taxpayers of the town of Andes was presented to the county judge of Delaware County, upon which an order was entered and notice given,

as required by the statute, which order and notice were in these words:

" To whom it may concern:

" Notice is hereby given that a petition purporting to be signed by a majority of the taxpayers of the town of Andes, in the county of Delaware, representing a majority of the tax- able property in the limits of said town, duly verified by one of the petitioners, has been filed in my office, and that I shall proceed on the 22d day of May next, at 1 o'clock P.M., to take proof of the facts set forth in said petition as to the num- ber of taxpayers joining in such petition and as to the amount of taxable property represented by them.

" Given under my hand, at Delhi, in said county, on the 6th day of May, 1871.

" EDWIN D. WAGNER,
" *County Judge of Delaware County.*

" On reading and filing the annexed petition of a majority of the taxpayers of the town of Andes, Delaware County, representing a majority of the taxable property in the limits of said town, verified by James H. Davis, one of said petition- ers, setting forth that they are such a majority of taxpayers and represent such a majority of the taxable property, and that they desire said town of Andes shall create and issue its bonds to the amount of ninety-eight thousand dollars and invest the same or the proceeds thereof in the stock of the Delhi and Middletown Railroad Company, an association formed in said county and State.

" Now, on motion of White and Jacobs, attorneys for said petitioners, [ordered] that a notice be forthwith published in the Andes Recorder, a newspaper published in said county, directed to whom it may concern, that on the 22d day of May, 1871, I shall proceed to take proof of the facts set forth in said petition as to the number of taxpayers joining in such petition and as to the amount of the taxable property represented by them.

" Delhi, May 6th, 1871.

" EDWIN D. WAGNER,
" *County Judge of Delaware County.*"

Due publication thereof was made. The petition referred to was upon nineteen separate sheets of paper, each of them containing the petition in full and each signed by different taxpayers. Sixteen of them were unconditional; to two of them was attached a condition, " that said road is located by Fish Lake and Shavertown;" and one of them had this proviso, " above conditions (consent) shall be null and void unless said road shall be located by Shavertown and Lumberville." On the day named in the notice, to wit, May 22, 1871, two orders were entered, the first, after stating the presentation of the petition, the order for notice, proof of publication of notice and of the allegations in the petition, ended with this adjudication:

" I do hereby adjudge and determine that said petitioners do represent a majority of the taxpayers of said town of Andes, Delaware County, as shown by the last preceding tax list or assessment roll, and do represent a majority of the taxable property upon said list or roll, and do hereby adjudge and determine that the same be entered of record.

" Given under my hand, at Delhi, in said county, on the 22d day of May, 1871.

" EDWIN D. WAGNER,
" *County Judge of the County of Delaware.*"

The second appointed the three commissioners required by the act to carry out its provisions. Subsequently, one of the commissioners having resigned, another was appointed in his place, and the three thus appointed acted on behalf of the town in issuing the bonds.

From the time of their issue, down to and including September 1, 1881, the town regularly paid the interest as it fell due upon the bonds, and also paid and retired $3000 of the principal thereof. Thereafter, some question having arisen as to the validity of the bonds, the town defaulted in payment of further interest, and on December 30, 1889, the defendant in error brought this action in the Circuit Court of the United States for the Northern District of New York on coupons cut from such bonds. Answer having been filed, the case was

tried December 31, 1890, and the jury, by direction of the court, returned a verdict in favor of the plaintiff for the sum of $32,324.80. To reverse this judgment the defendant sued out this writ of error.

*Mr. W. H. Johnson* for plaintiff in error.

*Mr. John B. Gleason* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The act of 1869 has been heretofore presented to this court for consideration, and the effect of a judgment of a county judge determined. *Orleans* v. *Platt*, 99 U. S. 676; *Lyons* v. *Munson*, 99 U. S. 684. In the former case it was said:

"The county judge was the officer charged by law with the duty to decide whether the bonds could be legally issued, and his judgment was conclusive until reversed by a higher court."

And in the latter:

"The county judge unquestionably had jurisdiction to decide upon the application made by the taxpayers. His judgment until reversed was final. If there were errors the proceedings should have been brought before a higher court for review by a writ of *certiorari*, and, if need be, the issuing and circulation of the bonds should have been enjoined, subject to the final result of the litigation. The judgment rendered can no more be collaterally attacked in this case than could any other judgment of a court of competent jurisdiction rendered with the parties, as in this case, properly before it."

It is objected that since those decisions the Court of Appeals of the State of New York has pronounced the very judgment on the strength of which these bonds were issued invalid. *Craig* v. *Town of Andes*, 93 N. Y. 405. In that case the Court of Appeals, by a bare majority, held that the petition was fatally defective because it was, as to some of the petitioners, conditional, and that, by reason thereof, it warranted no action by the county judge. But in the subsequent case of *Calhoun* v. *Millard*, 121 N. Y. 69, it was developed that *Craig*

v. *Town of Andes* was a collusive action, the town owning the coupons sued on and paying for the services of counsel on both sides. And it was held that the decision so obtained could not be considered as an adjudication binding the bondholders in any subsequent controversy between them and the town, the court saying: "We fully assent to the claim of the counsel for the bondholders, that an adjudication obtained under such circumstances ought not to stand in the way of a reexamination by the court of the grounds upon which it proceeded."

It is true that the court did not reëxamine the proposition affirmed in the former opinion, but, after thus indicating that the question was open for further consideration, disposed of the case upon other grounds. The question must, therefore, be considered an open one in the courts of New York, and there is nothing in the decisions of those courts to compel a reëxamination by us of our prior rulings.

Several objections, however, to the validity of this judgment are called to our attention, and require notice. The first and principal one arises out of the fact, considered vital by the Court of Appeals in the case of *Craig* v. *The Town of Andes, supra,* that the petition was, as to some of the petitioners, conditional. It is admitted that if the names of the conditional petitioners were stricken from the list, the remainder would not constitute a majority of the taxpayers, or represent a majority of the taxable property. The argument is that a conditional petition amounts to nothing. The unconditional petitioners were neither a majority of the taxpayers nor representing a majority of the taxable property. The statutory petition was never filed. The condition upon which action by the county judge could legally be had did not exist. He, therefore, never acquired any jurisdiction, and his judgment was *coram non judice* and void.

We are unable to assent to this contention. The petition as presented alleged that the petitioners were a majority of the taxpayers, and represented a majority of the taxable property. It thus stated the facts necessary to invoke the action of the county judge. It nowhere disclosed the amount of the

taxable property in the town, or the number of the taxpayers, and nowhere stated how much of such taxable property belonged to the petitioners, either separately or altogether. There was but a single verification, and that at the bottom of one of the nineteen sheets upon which the petition was written. That sheet was signed by over forty names, and signed unconditionally. It is fair, however, to regard the nineteen sheets, though in form separate, as really constituting but one petition, and the single verification, which was made on May 6, 1871, the day of presentation to the judge, as applicable to such petition as a whole. Otherwise this single verified sheet was a perfect petition, open to no objection and compelling action by the county judge; and if this case is to turn on narrow grounds then each sheet may be considered a separate petition, and one being technically beyond objection, the others may be ignored, and the jurisdiction of the county judge rested upon that one.

But we are not disposed to rest our conclusion upon this narrow ground. There was but the one petition, signed by about 200 parties, of whom 50 attached a condition to their signatures. Was that sufficient to defeat the jurisdiction? The conditions named were the location of the road by Fish Lake, Shavertown, and Lumberville. The various sheets composing the petition were all dated November 23, 1870, but the verification and the filing were May 6, 1871. Intermediate these two dates, and on March 4, 1871, the railroad company filed in the office of the clerk of Delaware County a map of the route selected by it, certified by its president and chief engineer to be "a correct map and profile of the route intended to be adopted by said company for their railroad." An examination of the route thus located shows that it passes by the three places named, so that at the time the petition was filed the conditions had been performed by the railroad company. Is it not fair to hold that the petition was at the time of its presentation an unconditional petition on the part of all the signers? There was in fact no limitation or restriction on the express request of all the petitioners for the issue of the bonds. At least, when such a petition was presented,

it was within the competency of the county judge to hear and determine whether or no the conditions named had been performed. The petition called for some action. The duty of judicial inquiry arose, and there can be no judicial inquiry without jurisdiction. He was compelled to examine and determine whether the verification was in proper form, whether there were in fact the signatures of any petitioners on the paper, whether any railroad company was named, and whether there was an application for the issue of bonds, and if there were any limitation or qualification to a signature, whether such limitation or qualification affected substantially the merits of the application. If he found a condition of a substantial character he was then called upon to ascertain and decide whether the condition had been waived, or so far performed since the signature as to cease to be any limitation upon the petition. An error in his rulings upon any of these matters did not oust him of jurisdiction. This, it must be borne in mind, is not the case of a total failure in respect to any particular matter required by the statute to be stated in the petition.

But we may go further, and hold that attaching a condition to a petition does not always and necessarily vitiate it. A subscription by a municipality to the stock of a railroad company stands upon a different footing from one made by an individual. In the latter case it is a mere transaction for purposes of pecuniary gain, and there is no limitation on the right of the individual to subscribe to the stock of any railroad corporation, no matter where such corporation proposes to build its road. But a municipal subscription requires something more than the mere prospect of pecuniary gain. It can be upheld only on the theory that by the construction of the road some public benefit to the municipality is secured, and that public benefit may justify, and sometimes require, the insertion in the subscription of a condition in respect to the matter of location. A railroad corporation naming the termini of its road has large latitude in respect to the location of the intermediate route. One location may be so far from a particular town between the termini as to make indefensible a subscription, by such town in aid of the construction,

and to incorporate a condition in the subscription which makes the location one of public benefit to the town cannot be held absolutely void. Suppose the entire petition had been for the issue of bonds on condition that the road should be located through the town of Andes, could it be adjudged that such a petition was a nullity and laid no foundation for action by the county judge? We think not.

While courts may properly see to it that proceedings for casting burdens upon a community comply with all the substantial requisitions of a statute in order that no such burden may be recklessly or fraudulently imposed, yet such statutes are not of a criminal character, and proceedings are not to be so technically construed and limited as to make them a mere snare to those who are encouraged to invest in the securities of the municipality. These considerations are appropriate to this case. The proceedings on the part of the town and the railroad company were carried on in evident good faith. No one questioned their validity, no effort was made to review the action of the county judge, the bonds were issued, more than $100,000 was spent within the limits of the town in the construction of the road, and years went by during which the town paid the interest and part of the principal before any question was made as to their validity. We think there is eminent wisdom and justice in the observations of the Court of Appeals in the case of *Calhoun* v. *Millard, supra :*

"The town and the taxpayers permitted the bonds to be dealt with and taken by savings banks and others for nearly ten years, not only without, so far as appears, a word of warning or protest, but by affirmative acts of recognition, encouraged investment therein as safe and valid securities. The bonds, resting on the adjudication of the county judge, were apparently valid. The legislature has still the power to ratify them and make them valid obligations of the town. *Williams* v. *Town of Duanesburgh*, 66 N. Y. 129; *Horton* v. *Town of Thompson*, 71 N. Y 513; *Rogers* v. *Stephens*, 86 N. Y. 623. They are now in the hands of *bona fide* holders, that is, of persons who have paid value for them without notice. . . . The denial of relief in this case may result practi-

cally in the enforcement of the bonds in question, and also of other town bonds issued and held under similar circumstances. But in contrasting the relative conduct and situation of the town and the taxpayers on the one side, and the purchasers of bonds on the other, we cannot say that such a result will be repugnant to any principle of justice or equity."

Again, it is objected that there was no legal incorporation of the Delhi and Middletown Railroad Company. The statutory provisions of the State of New York in respect to the formation of railroad corporations are found in chapter 140, Laws of 1850; Rev. Stat. N. Y. 6th ed. vol. 2, p. 519. The record shows that the articles of association, duly verified, were filed and recorded in the office of the Secretary of State, as required by section 2 of the act. The objection is that the statute requires that there shall be subscribed at least $1000 of stock for every mile of railroad proposed to be laid, and that, as appears from the articles, certain subscriptions were made on condition that the road was located through Lumberville, and others, provided the road went to Shavertown. These subscriptions being conditional it is claimed amount to nothing, and as the unconditional subscriptions are less than $1000 per mile of the proposed road, it is insisted that the attempted incorporation was a failure. We deem it unnecessary to consider this question, for it is familiar law that one who contracts with a corporation as such cannot afterwards avoid the obligations assumed by such contract on the ground that the supposed corporation was not one *de jure*. *Leavenworth* v. *Barnes*, 94 U. S. 70; *Commissioners* v. *Bolles*, 94 U. S. 104; *Casey* v. *Galli*, 94 U. S. 673; *Chubb* v. *Upton*, 95 U. S. 665. Further, after the contract had been made, the bonds issued, and the stock received by the town, the legislature of the State of New York passed, in two successive years, acts authorizing the town to sell and dispose of such stock. At a special town meeting, held after the passage of the first act, the town voted not to sell, and at a meeting held after the second act it voted to sell. These two acts of the legislature were distinct recognitions of the existence of the corporation known as the Delhi and Middletown Railroad Company,

whose stock, held by the town, the latter was permitted to sell. *Comanche County* v. *Lewis*, 133 U. S. 198.; *State ex rel.* v. *Commissioners &c.*, 12 Kansas, 426; *State* v. *Stevens*, 21 Kansas 210; *State* v. *Hamilton*, 40 Kansas 323. There is no evidence of any challenge on the part of the State of the validity of the corporate franchises assumed to exist, and exercised by the company. In view of these considerations it is impossible now to recognize as valid the claim that by reason of the supposed defect in the original incorporation all the acts of the town, in respect to the issue of bonds, the subscription to and the receiving of stock, were void.

Again, it is objected that the proceedings before the county judge were absolutely void on the ground that the notice does not specify the place at which the hearing on the petition is to be had. It is enough to say in reply to this objection that where a notice fails to name any other place it will be presumed that the place intended is the regular office of the county judge. No particular specification is required unless the hearing is to be had at some place other than that at which his judicial work is customarily done. The statute under which these proceedings were had recognizes this. The section which provides for notice prescribes that the county judge shall order the publication of a notice "setting forth that on a day therein named . . . he will proceed to take proof," etc. Nothing is said in respect to naming a place for the hearing, and yet the next section commences, "it shall be the duty of the said judge at the time and place named in the said notice," etc. Any seeming discrepancy between these sections is removed by the consideration that in the absence of other specification the law writes into the notice the office of the county judge as the place of hearing.

A further objection is that the county judge was disqualified on the ground that he was at the time a stockholder in the Delhi and Middletown Railroad Company, and this provision of the Revised Statutes of the State of New York is cited, "That no judge of any court can sit as such in any cause to which he is a party, or in which he is interested, or in which he would be excluded from being a juror by reason of

consanguinity or affinity to either of the parties." The name of the county judge appears on the articles of association, filed with the Secretary of State, as a subscriber to one share of stock; but his testimony, which is not contradicted, is as follows:

"I signed for one share of stock, and the next day I stated to the person with whom I took the stock that I would not take it, and he agreed to take my name off.. I don't know who it was, and I can't tell as I signed my name or not. I know I saw the proper person and cancelled my agreement to take the stock, and I never took it; it was agreed that I should not. I think it was the same person I saw first when I made the agreement. The bonding proceedings of the town of Andes were had before me as county judge. The talk as to my taking stock was some time before the proceedings were had before me. The certificate of stock was never tendered or offered to me."

Obviously he was not a party interested, and therefore there is no need to inquire whether, if interested, the fact could now be shown in a collateral attack so as to avoid the judgment.

But further, in view of the recitals in the bonds, are these questions open for inquiry? Ample authority was given by the statutes of the State referred to. Whether the various steps were taken which in this particular case justified the issue of the bonds was a question of fact; and when the bonds on their face recite that those steps have been taken it is the settled rule of this court that in an action brought by a *bona fide* holder the municipality is estopped from showing the contrary. See the many cases commencing with *Knox County* v. *Aspinwall*, 21 How. 539, and ending with *Citizens' Savings Association* v. *Perry County*, 156 U. S. 692. It may be said that those decisions are not wholly in point, inasmuch as these bonds were signed, not by regular officers, but by commissioners specially appointed; and that before a recital made by them can be held to conclude the town it must appear that they were duly appointed, and thus had authority to act. Doubtless this distinction is not without significance. Yet

they were acting commissioners, and their authority was recognized, for each bond was registered in the office of the county clerk, and attested by the signature of the county clerk with the seal of the county; and if we go back of that to the records of the county judge, the appointing power, there appears there a separate order, in due form, appointing them commissioners, which order recites a prior adjudication of all the essential facts. Giving full force to the distinction which exists between the action of general and special officers, there must be, even in respect to the latter, some point in the line of inquiry back of which a party dealing in bonds of a municipality is not bound to go in his investigations as to their authority to represent the municipality, and that point it would seem was reached when there is found an appointment in due form made by the appointing tribunal named in the statute. However, as our examination of all the proceedings in fact had in respect to the issue of these bonds satisfies us of their validity, it is unnecessary to rely upon the mere recitals.

Finally, the jurisdiction of the trial court is challenged on the ground that under the act of Congress of March 3, 1887, c. 373, 24 Stat. 552, as amended by the act of August 13, 1888, c. 866, 25 Stat. 433, a subsequent holder of negotiable paper payable to bearer cannot invoke the jurisdiction of the Federal courts unless the original holder was also entitled to sue therein. But the statute excepts from this provision instruments made by a corporation, and a town under the laws of the State of New York is a corporation, so far as respects the making of contracts, the right to sue and the liability to be sued. *Lorillard* v. *Monroe,* 11 N. Y. 392.

These are the only questions which are of sufficient importance to require notice. We see no errors in the rulings of the Circuit Court, and its judgment is, therefore,

*Affirmed.*