JAMES LYNCH, LATE SHERIFF, ETC., PLAINTIFF, *v.* BENJAMIN F. BUTLER, DEFENDANT.

*Fees of a sheriff on attaching property — the judge has no power to allow compensation for unperformed services — Code of Procedure, sec 243*

An attachment, issued in this action in November, 1864, was served upon the assistant treasurer of the United States and two other persons by delivering a copy of it to them, with a notice stating that the sheriff attached all property, debts, credits, etc., of the defendant in their possession or under their control No property of the defendant was at that time in the hands of either of the said persons, except that there was then on deposit with the sub-treasurer to the credit of the defendant, as major-general commanding, certain moneys which he claimed were public moneys. In February, 1866, the suit was settled by the delivery of $50,000 in gold certificates to the plaintiff in the attachment, which were shown to have represented the money so deposited to the credit of the defendant, and an order was entered discontinuing the action, upon a stipulation agreeing that this should be done without costs to either party, except that the legal fees of the sheriff should be paid by the defendant.

Thereafter an order was made by a judge of the court adjusting and settling the fees of the sheriff at $885 87, of which amount the sum of seven dollars and sixty two cents was allowed for fees to which the sheriff was legally entitled, and the sum of $878.25 was allowed " as reasonable and proper for his trouble and expenses in, and all his services in the premises "

In an action, brought by the sheriff to recover the fees so allowed, it was.

*Held,* that the fees of the sheriff were to be determined by section 243 of the Code of Procedure, as it was enacted in 1849, which provided for the recovery by the sheriff of fees and also of compensation for any further services which he might render in taking, possession of and preserving the property.

That as in this case no additional services were rendered by the officer, and as no property was, as a matter of fact, attached or taken into the possession of, or preserved by, the sheriff, the judge had no jurisdiction to allow the sheriff compensation for such unperformed services.

*Birkbeck* v. *Stafford* (14 Abb Pr., 285) distinguished.

MOTION by the defendant for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict had been directed for the plaintiff.

This action was brought by the plaintiff to recover the fees alleged to be due to him, and which had been adjudged and settled and

allowed as his fees under an attachment, issued in an action brought against the defendant in the above entitled action.

*Henry Thompson* and *James R. Cuming*, for the plaintiff.

*John E. Develin*, for the defendant.

Daniels, J. :

The verdict was directed for the plaintiff for the sum of $885.87, with interest thereon from the 7th of November, 1886. It was for the fees and compensation allowed to the plaintiff upon an attachment issued to him against the property of the defendant. The attachment was issued on the 11th of November, 1864, and, according to the testimony of the person having it in charge under the sheriff, it was not otherwise served than by delivering a copy of it, with a notice stating that the sheriff attached all property, debts, credits and effects, and all rights and shares of stock, with all interest and profits thereon and all dividends therefrom, of the defendant in the possession or under the control of J. A. Stewart, assistant treasurer of the United States government, and upon McCombey & Child, of No. 11 Water street, and on Gideon J. Tucker, the surrogate of the county of New York. These copies were so served during the first half of the month of November, 1864, and while a certificate was required to be furnished by the persons on whom the service was made of any rights, shares, debts or other property of the defendant incapable of manual delivery, no such certificate, as a matter of fact, appears to have been obtained by the sheriff, but the services under the attachment were completed by the delivery of these copies with the notice upon the persons served. The defendant, whose testimony was not contradicted, testified that he had no property in the hands of the assistant treasurer, or of the surrogate of the county of New York, at or after the time when the attachment was in this manner served, and it was not contended that he had any property whatever in the possession or under the control of McCombey & Child. His testimony was further to the effect that moneys were on deposit with the sub-treasurer, at the city of New York, to the credit of the defendant, but that these were public moneys which were placed at his disposal as commander of the troops of the United States,

and which he was empowered to use only in the public business; that it was not his money at all, but stood in his name as major-general commanding.

In February, 1866, the suit was settled by the delivery of $50,000 in gold certificates to the counsel for the plaintiff. These certificates were shown to have represented this sum of money appropriated by the defendant while he was in charge, as an officer of the army, of the city of New Orleans. The assets of the bank were taken possession of by him, but were afterwards returned, and upon information being received that there were two kegs of specie which had been bricked behind the safe, in the wall of the bank, just before the United States troops arrived in New Orleans, he ordered the wall to be opened and the specie removed. That was done apparently upon the claim that the money was forfeited to the United States, and it remained under the custody of the war department until a claim was made for it by the plaintiff, and the defendant applied for instructions requesting the department to take the burden of the suit, and indemnify him, or to authorize him to settle it. And upon a representation being made that the plaintiff had been a loyal man, the department declined to interfere, leaving the defendant to take care of himself, and he then delivered the gold certificates in satisfaction of the right of action. The suit was thereupon discontinued without costs to either party, except that the legal fees of the sheriff were to be paid by the defendant, and an order of discontinuance to that effect was entered. After that an application was made to the judge who issued the attachment to adjust and settle the fees of the sheriff and his compensation for services under the attachment. It was conceded that the sheriff was entitled to the sum of seven dollars and sixty two cents for his fees, and the judge added such a sum to the amount as made the total $885.87, which he certified and allowed, " as reasonable and proper for his trouble and expenses in, and all his services in the premises." This certificate was held to be conclusive against the defendant on the trial, inasmuch as his counsel was heard before the judge at the time when the adjustment took place. The case of *Birkbeck* v. *Stafford* (14 Abb. Pr. 285,) was followed as sustaining this conclusion.

But in that case it did appear that the sheriff had taken property into his possession under the attachment, and the officer consequently

had facts before him upon which he could justly make an allowance by way of compensation beyond the fees for the service of the attachment, while in this case it does not appear that any proof of that fact was submitted to the judge. It appears, on the contrary, that the proof acted upon consisted only of an affidavit of the same person who was sworn as a witness upon the trial, describing in his evidence the services rendered by him under this attachment. And as there is no recital in the order to the contrary, it may be assumed that the witness stated no more in that affidavit than he did in his evidence given upon the trial. And it could not accordingly have appeared before the judge that any more had been done under the attachment than to make the service of these three certified copies. The order or allowance of the judge does not profess to award to the sheriff anything by way of compensation for taking possession of or holding any property, and it contains nothing inconsistent with the construction that the allowance was made for the services alone which this witness described and detailed as having been rendered under the attachment. For those services, specified fees were provided by law. At the time when they were rendered and the right of the sheriff to fees for the services accrued, section 243, of the Code of Procedure, as it was enacted in 1849 was in force, and that provided that the sheriff should be entitled for services under the attachment to the same fees and compensation, and the same disbursements, as were allowed by law for like services and disbursements under the provisions of chapter 5, title 1 and part 2 of the Revised Statutes. This obviously related to so much of chapter 5 as prescribed the duties of the sheriff under attachments against absconding, concealed and non-resident debtors. And by the provisions of the statute prescribing the fees for those services, they were particularly designated, and, in addition to that, it was further declared that the officer should be allowed "such additional compensation for his trouble and expenses in taking possession of and preserving the property attached, as the officer issuing the warrant shall certify to be reasonable." (3 R. S. [6th ed.] 914, sub. 10, § 35.)

This subdivision of the statute distinguishes between the services performed in the service of the attachment itself, and in taking possession of and preserving the property attached. And so did section 243 of the Code of Procedure, for that provided for the

recovery by the sheriff of fees, and also of compensation for the further services which he might render. In the present instance no such additional services were rendered by the officer, for no property as a matter of fact, was attached, neither was any taken possession of, or preserved by him, and it is to be presumed, from the evidence of the witness who served the attachment, that no proof could have been submitted to the judge establishing the fact that property was attached, or taken possession of by the sheriff. Neither does the certificate of the judge recite, or in any manner refer to, the fact that any such proof had been produced, and in its absence the judge had no jurisdiction whatever to allow to the sheriff compensation for such an unperformed service. To supply jurisdiction over this subject, some proof was required to be given, indicating the fact to be that ·property had been seized under the attachment and taken possession of by the officer, for as much as that is requisite to supply jurisdiction in proceedings of a judicial character. (*Staples* v. *Fairchild*, 3 Comst. 41, 46.) And whether jurisdiction over the subject matter has been acquired is a fact which may be inquired into in any court, where the proceedings are relied upon and brought up for further consideration and action. (*Craig* v. *Andes*, 93 N. Y., 405, 410.)

The judge could not arbitrarily make this allowance to the plaintiff, he could do so only under the authority of the law. This authority was contained in the section of the Code of Procedure which has already been mentioned, for the services were rendered and completed before the amendment of 1865 was adopted, allowing the sheriff poundage on the amount where a settlement of the suit should take place. Besides this, the allowance of poundage was no part of the·order of adjustment of the judge, and was not a matter committed to his authority, by the amendment of 1849, but what he had, and all that he had authority over, was the compensation to be allowed for taking possession of and preserving property attached. And as none had been attached, the sheriff was entitled only to the fees prescribed by law, for the services which he rendered, and the law governing those fees was this section of the Code which has been mentioned. (*Supervisors, etc.,* v. *Briggs*, 3 Denio, 173; *Porter* v. *Cobb*, 25 Hun, 184; *Woodruff* v. *Fire Ins. Co.*, 90 N. Y., 521.) Beyond that, the stipulation upon which the action was discontinued and the order following it, obligated

the defendant to pay no more than "the legal fees of the sheriff.' This was the extent of the liability entered into by him, and the adjustment made in favor of the sheriff by the judge could impose no further liability upon him. Both the stipulation, and the order following it, have been expressed in such terms as to indicate a design to exclude compensation for taking possession of and preserving property attached, by restricting the amount to be paid to the legal fees. These are significant terms, and indicate the compensation to be received by the sheriff to be the fees for the services actually rendered by him, excluding the idea of compensation for taking possession of or preserving attached property And they are to be construed and applied, in view of the circumstances existing at the time when these parties employed them. *Knapp* v. *Warner*, 57 N. Y., 668; *Coleman* v. *Beach*, 97 N Y, 545)

They are to be assumed, therefore, to have been employed by the parties, with the knowledge of the fact that the extent of the sheriff's services was the delivery of these three copies of the attachment. And with that understanding it could not have been intended on either side that the defendant, by the employment of these words, should subject himself to more than the payment of the fees of the sheriff for making the service which he did of the attachment. The language used, too, had peculiar legal significance, and when legal terms are employed in an agreement they are to be construed, where the contrary does not appear to have been the design, to be expressive only of their legal significance. (2 Parsons on Contracts [6th ed.] 498.) The obligation of the defendant was not to pay what might be certified by way of compensation by the judge, but to pay only the legal fees of the sheriff. His legal fees, so far as he rendered services, were agreed to at seven dollars and sixty-two cents, and as they could amount in no view to more than that, this, with interest, was the limit of the defendant's liability in the action. Neither of the authorities collected and cited in favor of the plaintiff sustains any further or additional liability of the defendant under this stipulation and order.

The verdict should, therefore, be set aside and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., and BRADY, J., concurred.

Verdict set aside, new trial ordered, costs to abide event.