Kennedy, J.
The Delhi and Middletown Railroad Company is a corporation duly organized under the laws of the state of New York, November 14, 1870, for the purpose of constructing and operating a railroad from Delhi to Griffins Corners, in the county of Delaware, and through the towns of Delhi, Bovina, Andes and Middletown. A petition of certain of the taxpayers of the town of Andes, *48 asking that the said town issue its bonds to the amount of $98,000, and that it take stock therefor in said company in aid of the same, was prepared.
About the month of May, 1871, this petition was presented to the county judge of Delaware county, and such proceedings were had before him that he adjudged that a majority in number of the taxpayers of said town, representing a majority of the taxable property therein had joined in said petition, and he appointed commissioners to carry out such purpose, they, thereafter, issued $98,000, par value of bonds of said town, bearing date September 1, 1871, maturing on the 1st day of September, 1901, with semi-annual interest coupons attached at seven per cent. On the 3d day of November, 1871, the whole issue of said bonds were duly registered in the office of the clerk of Delaware county. On the 6th day of December, 1871, all said bonds were delivered by the commissioners to said railroad company, in payment for $98,000 par value of the capital stock of said railroad company, certificates for which were thereupon delivered to said town.
These bonds were put upon the market, and immediately passed into the hands of bona fide holders, they paying full value therefor. The several defendants, other6than Ballantine, became such holders. The town of Andes paid the interest on the bonds from September 1, 1871, down to September 1, 1881. In 1878, the town, in pursuance of a resolution of the town meeting held therein, paid $3,000, of the principal of said bonds, and no question made on its behalf as ro its liability to pay until about the time this action was commenced,
The action is in equity and seeks an injunction restraining the defendant, Ballantine, as supervisor, from paying the interest on said bonds maturing on the 1st day of March, 1882, the money for which had been levied and collected by the town, and paid over to him for that purpose; and among other things to have said bonds in the hands of the holders adjudged void, because of a non-compliance with the requirements of the law in that regard, made necessary as a concition precedent to the rights on its part to issue and charge it with the payment of them; also, asking for the appointment of a receiver to whom the said bonds should be delivered for the purpose of being canceled, etc.
In the answers interposed by the several defendants, bondholders, the ten years’ statute of limitations is set up as a defense, as well as also the want of all equities on the part of the plaintiffs, growing out of the lapse of time since the bonds issued, and the continued recognition by the town of its liability to pay evidenced by the payment of interest as it mabured for ten years or more, and the payment of a part of the principal during said time.
At special term the trial court found, among other things, that all of the provisions of law necessary to confer power *49 on the town to issue the bonds had been complied with, and that they were legally issued, and were subsisting and valid obligations against it.
It was also found and adjudged that the right of action in the plaintiffs as taxpayers, was barred by the ten years’ statute of limitations.
Also, that the town and its taxpayers having allowed the adjudication of the county judge to remain unquestioned for more than ten years, and having paid the interest on said bonds for ten years without questioning their validity, there is no equity in this action brought to compel innocent purchasers to surrender their bonds.
Outside of the question as to whether these bonds were duly made and issued by and on behalf of said town of Andes, and in such manner as to charge it legally with their payment the question is presented, ‘ ‘ Have the plaintiffs as taxpayers such standing in this action that they may successfully invoke the equitable powers of the court for their relief and in their behalf ? ”
The bonds in question had been in general circulation, the subject of purchase and sale, and as a source of investment for more than ten years immediately before the commencement of the action. During that time the town of Andes had, at least twice in each year, made public its proclamation that they were valid and subsisting obligations against it, by the levy and collection of the necessary sum from the taxpayers of the town for the payment of the interest maturing thereon, and the appropriation of the money so collected to that purpose, thereby by its acts inviting innocent parties to invest their money in the purchase; the defendants with others, relying upon this repeated ratification, have purchased and become the owners of said bonds in good faith, paying the full face thereof, and in some instances premiums.
If in determining the power to be exercised by this court in this regard, it is of profit to examine into other and antecedent acts of the town, we find it written on the face of the bond, “that all necessary and legal proceedings have been taken and had under said acts,” to authorize the town to issue said bonds. Upon the records of the county clerk of Delaware county is spread the adjudication of the county judge adjudging that the town was duly and properly authorized and empowered to issue said bonds and to make them a charge against it.
Under these circumstances can it be successfully claimed that equity should step in and by a judgment adjudge that the town or a taxpayer therein, in this respect equally affected by its acts, shall be relieved at the expense of an innocent party, who has been induced to part with his *50 money through the influence of these solemn declarations and repeated acts?
The proposition is repugnant to a proper sense of justice and right, and can only be sustained by reversing the legal axiom, that where one of two innocent parties are to suffer by reasons of acts committed, it shall be he who has caused and not him who has suffered the injury, by adjudging protéction to the one who has been instrumental in occasioning the wrong at the expense of the victim of his acts.
In the case of Alvord v. The Syracuse Savings Bank (98 N. Y., 600), it is held that where bonds of this character had been issued, and the town had paid the interest, annually, for more than ten years, that the case was not one authorizing a court of equity to cancel the bonds. In that case it is said : “ Where to the necessary construction of the act, it is added that the plaintiff on applying to a court of equity, where, inexcusable laches is always a reason in its discretion for withholding its aid, after they have slept upon thyir rights for ten years, after failing to prevent or enjoin the issue of said bonds after twenty-one interest coupons have been paid, without murmer or dissent, and after the proceeds have been fairly expended upon the road intended, and the expected benefits have been realized, it becomes very clear that the case is not one in which a court of equity should exert its extraordinary power to cancel the bonds.”
It is true in the Alvord Case the contemplated road was completed and put in operation, while in this case the money realized from the bonds was honestly expended towards the building of the road, but its final completion was prevented for lack of the necessary means; still this fact does not, as it seems to us, make any difference in the application of the rale.
In the case of Craig v. The Town of Andes (93 N. Y., 405), which was an action at law brought to collect unpaid coupons due upon some of these same bonds, and which it seems was a collusive action brought and prosecuted at the instigation of the town and tried with a view of reaching a result that should tend at least to relieve the town from liability, the distinction is made between proceedings at law to compel a cancellation, and Judge Danforth who wrote the prevailing opinion, speaking as to the accuracy of the doctrines assailed in the Calhoun Case (28 Hun, 380), uses the following language: “Nor is the correctness of that decision in question here, for a court in equity might in its discretion refuse to interfere and leave the party to his legal rights.”
We are not willing to subscribe to the doctrine contended *51 for by the plaintiff, but instead believe it the exercise of a sound and wholesome discretion to refuse the aid of the extraordinary powers of this court to compel the cancellation of obligations of this character in the hands of bona fide holders after ten years laches by the town or tax-payer, during all of which time they not only omitted to challenge in any manner their integrity, but instead repeatedly affirmed, as far as acts can do, their validity and the town’s obligation.
This action was commenced on the 6th day of January, 1882. The statute provides that actions for equitable relief shall be brought within ten years after the right of action accrued. Section 388 of the Code of Civil Procedure.
The adjudication of the county judge was entered in the clerk's office May 22, 1871, and there became a part of its records. The bonds were dated September 1, 1871, and were registered in the Delaware county clerk’s office on the 30th day of November, 1871, and were actually delivered to the railroad company in payment for its stock on the 6th day of December, 1871. The right of action to test the validity of the bonds certainly accrued on the last mentioned day, if not when the adjudication was filed. More than ten years having elapsed before this action was commenced, it is not quite apparent why the right to maintain it is not barred by the above statute.
The suggestion may be made that a right of action accrues to any tax-payer in the town, whether such at the time the bonds were issued or becoming such at any .time afterwards, and that as to such an one the right accrued only at that time, but this cannot be supported because if adopted there would in cases of this kind exist no limitation, and any new comer could maintain it even down to the time the obligations actually matured, however remote from the time of the issue.
Again, the defendants having made a prima facie case bringing the matter within the statute, it was incumbent on the plaintiffs to show some reason why it did not apply. We find no evidence tending to this result.
The relief sought, among others, is that the bonds be adjudged invalid, and they be surrendered by the defendant’s holders to an officer appointed by the court, for their cancellation.
The action is tried and determined upon the merits, and the result is a judgment dismissing the complaint on the merits. The effect of this is to establish the validity of the bonds, and in any future action brought against the town by these defendants, at least to enforce payment, or by it to compel their cancellation, would estop it from interposing the defense that they were illegally issued.
*52 Prom this judgment the town, or its supervisors, has not appealed, nor have the plaintiffs. If the bonds are valid against the town, they are valid in the hands of the respective holders, and any judgment which might be rendered in this case, as it now stands, would seem in no manner to impeach the integrity of the bonds, or to aid the plaintiffs in the further prosecution of this action.
Besides, by the provisions of the statute above referred to, the action can only be maintained against the town, its officers or agents. The bondholders are proper parties to be joined with the town, etc., that they may be given a day in court when their interests are involved, and may be determined. But the right of action in the taxpayer being purely statutory cannot be maintained against the bondholders alone, there being no authority at common law for its maintenance. Alvord Case, 34 Hun, 143.
The foregoing views render it unnecessary to determine whether there was actual authority in the town to issue the bonds, or whether the requirements' of the statute made necessary to be complied with as conditions precedent to the exercise of such power, have been complied with or not.
We are, therefore, of the opinion, for the reasons before stated, that the judgment should be affirmed.
Judgment is affirmed, with costs to the respondents represented on this appeal by Messrs. W. & J. B. Gleason, their attorneys, and also to the Hudson City Savings Institution.
All concur. Follett, J., not sitting.