(5 Misc. Rep. 518.)

### ENGLEHARDT v. FIFTH WARD PERMANENT DIME SAV. & LOAN ASS'N.

(Superior Court of Buffalo, General Term.   November 14, 1893.)

1. BUILDING AND LOAN ASSOCIATIONS—RIGHTS OF WITHDRAWING MEMBERS.

A member of a loan association, on complying with the conditions for withdrawal required by the articles of association, ceases to be a member, and becomes a creditor, of the association; and his right to have his debt, then due, established by judgment, is not affected either by a provision in the articles that a withdrawing member is to be paid from funds when collected, or by the fact that the court may stay the issuance of execution on such judgment to protect the rights of all the members. Titus, C. J., dissenting.

2. SAME—POWER OF TRUSTEES.

The original right of a withdrawing member to be paid equally with others, from funds collected, is a substantial right, which the trustees of the association have no power to change by a resolution providing for the payment of the claims in the order of perfecting the withdrawals. Titus, C. J., dissenting.

Appeal from municipal court.

Action by William Englehardt against the Fifth Ward Permanent Dime Saving & Loan Association to recover money deposited with defendant. From a judgment dismissing his complaint, plaintiff appeals. Reversed.

Argued before TITUS, C. J., and HATCH and WHITE, JJ.

Benjamin F. Folsom, for appellant.

Henry W. Brendel, for respondent.

HATCH, J. I think this judgment should be reversed, for the following reasons: The articles of association provide that a member may withdraw when he chooses, upon complying with certain conditions. These requirements have been complied with by the plaintiff, and he became, when that event happened, a creditor of the association, and no longer a member. The association then presently owed him this money, which, by the articles of association, he

was entitled to receive from it. The fact that he was to be paid from the funds when collected does not change his status, and cannot affect his legal rights. He is still a creditor, his debt is due, and he has the legal right to have that debt established. If the association should fail to collect money, and fail to have funds on hand, is the creditor to be prejudiced thereby, and is the failure to collect to be an answer to his claim, and a defense, when he seeks to assert his rights? If this is his status, then he can never maintain an action at law so long as the association is without funds in the treasury, and then we have the anomaly of a creditor, with a debt due, denied his legal right. This precise question was the subject of decision by the courts of Pennsylvania, (Association v. Silverman, 85 Pa. St. 394;) and it was there held, for satisfactory reasons, that the action could be maintained, (End. Bldg. Ass'ns, §§ 136, 137, 141, 143, 266.) Doubtless, the creditor has an equitable right, which may be enforced by appropriate remedies; but his right is not so limited, nor is his legal right prejudiced thereby. I see no distinction between a case where the statute provides for withdrawal, and where the statute relegates to the association the right of making such provision in its articles. Here the provision in the articles is as broad as the provision of the statute in the Pennsylvania case, and certainly can have no greater force or effect. It is quite likely that, upon proper application, a court would stay the issuing of an execution or the prosecution of actions, in order to protect the rights of all the members, if such protection seemed necessary, but such fact does not militate against the right of plaintiff to have his claim established by judgment.

When plaintiff's withdrawal was perfected, funds sufficient were on hand to pay his claim, but there were not sufficient funds on hand to pay his claim and those of other members, who preceded him, in point of time, in perfecting their withdrawal. I doubt much the power of the trustees to provide by resolution, after plaintiff became a member, a preference of payment in favor of members who should first file their claims. To the extent of the amount paid in, each withdrawing member stands upon an equal footing to participate in the fund collected. When the member perfects his right of withdrawal, he is then the equal of any other member who has perfected such right, and is entitled to be paid. It is here that the resolution becomes operative, for it creates a preference in favor of those who have first perfected their withdrawal. It has been held that such a rule was inoperative when the association had ceased to be a going concern, (In re Blackburn & Dist. Ben. Bldg. Soc., 24 Ch. Div. 421; In re Sunderland, etc., Bldg. Soc., 24 Q. B. Div. 394;) and, by implication, that the rule found force when the society was solvent. But in both of these cases the rule was in existence, as part of the by-laws, when the association was formed. It is well settled that it is not within the power of the trustees to destroy the equality of shares in a stock company, or to take away a right which originally existed; and this even though the power exists to amend, alter, or repeal by-laws. Kent v. Mining Co., 78 N. Y. 159. In the present case, plaintiff's original right was to be paid equally with all others,

when his withdrawal became perfected. By the operation of the resolution, his right is postponed, and others preferred. This is something more than a mere regulation. It is the creation of preference in payment where all are equal. This right to be paid equally with the others is a substantial right, and, when the withdrawal is perfected, all persons therein must be treated alike; and a resolution which gives the whole fund then to one, in exclusion of the others, is the destruction of such right, which I believe to be beyond the power of the trustees to accomplish. Association v. Lewis, 1 Colo. App. 127, 27 Pac. Rep. 872. In either view, the judgment appealed from must be reversed.

WHITE, J., (concurring.) I am in favor of reversing the judgment appealed from, for the following reasons: Immediately upon the withdrawal by the plaintiff from the defendant, as a shareholder therein, the relation between him and the defendant became that of debtor and creditor. His claim against the defendant is an unliquidated one, and the plaintiff is entitled to prosecute his claim to judgment, within the principle laid down in sections 142 and 143 of Endlich's Law of Building Associations, and the cases there cited.

TITUS, C. J., (dissenting.) This is an appeal from the municipal court of Buffalo, from a judgment rendered in favor of the defendant against the plaintiff. The action was brought 'to recover $187 which the plaintiff had deposited with the defendant during the period of two years prior to October, 1892. The defendant corporation was organized under chapter 122 of the Laws of 1851, entitled "An act for the incorporation of building, mutual loan and accumulating fund associations," on the 27th day of February, 1890. It adopted articles of association and by-laws to regulate the business of the corporation, and the same were duly filed as provided by statute. On the 4th day of May the plaintiff subscribed for 10 shares of the stock of the corporation, and became a member thereof; and up to October 6, 1892, he had paid in, as dues, $187. He received no loan from the association, but allowed his dues to accumulate. In October, 1890, a rule or by-law was adopted by the defendant that persons withdrawing from the association should be paid in the order in which their applications for withdrawal were filed. At the time the plaintiff filed his application, there were then 78 applications for withdrawals by members on file. These applications for withdrawals amounted to $8,500, and at the time of the trial of this action the association had paid from the dues of its members $6,671.74, leaving something less than $2,000 unpaid. The association is solvent, and will eventually pay all of its shareholders the full value of their shares. The act of 1851 authorizes corporations organized under it to make articles of association, among other things, regulating "the transfer or withdrawal of shares." Section 10, art. 4, of the articles of association, provides that "members who have received no loan may withdraw at any time by giving at least one week's notice to that effect. The dues

actually paid, together with such accrued profits as the directors may deem prudent for the interest of the association, will be refunded to them when the necessary funds are collected." It appears that the necessary funds have been collected, or at least a sufficient sum to pay the amount due the plaintiff since his notice of withdrawal was served, but they have been used in paying the claims of members who served notices of withdrawal before the plaintiff, and in the order of the service of such notices. The question is whether the plaintiff is entitled to recover his money while there are yet outstanding claims of other members, who gave the notice of withdrawal before he did. It is claimed by the plaintiff that when he served his notice of withdrawal, as he had a right to do, he ceased to be a member of the association, not subject to pay dues, nor to any of the advantages or liabilities of a member, and sustained to the association the relation of creditor, only. This is undoubtedly so, but, in the proceedings to enforce his claim, he is still subject to the articles and by-laws of the association. When he became a member, the by-laws and articles of association became a part of his contract of membership with the defendant, and to that extent he is still subject to the agreement which he entered into; and his claim must be enforced, if enforced at all, as a member of the association, with the agreement still binding upon him. Livingston v. Lynch, 4 Johns. Ch. 573; Clearwater v. Meredith, 1 Wall. 25. The articles of association provide that the sum which he has paid for dues shall only be paid him when the necessary funds are collected, and that he shall be paid in the order of the filing of his notice of withdrawal. It would therefore seem that, in good conscience, he should abide by the laws of the association of which he is a member, and which form a part of his contract.

It is not questioned that the by-laws were regularly enacted at a regular meeting of the association, in conformity with all legal requirements. It is claimed, however, by the plaintiff, that this particular by-law was not in force when he became a member, but was enacted after that time; and it is said that, as he did not subscribe it, he is not bound by it. By-law 1 provides that "the board of directors may at any time make such by-laws as are deemed advisable for the management of the business of the association." Section 3 of the act of 1851 provides that "corporations organized under this act shall possess the powers and privileges and be subject to the provisions of the third title of chapter eighteen of part one of the Revised Statutes;" and by section 1 of that title it is provided that such corporation may "make by-laws, not inconsistent with any existing law, for the management of its property and regulation of its affairs." This power to make reasonable and proper by-laws is probably not disputed, but it is claimed, somehow, that the plaintiff is exempt from the operation of the by-laws, and that they cannot or should not be enforced against his claim. It seems to me that there can be no doubt that the members of the corporation are bound by such reasonable by-laws as it is authorized to make. Paine, in his work on Building and Loan Associations, at page 12, says:

"By assuming the relation of member, he contracts to fulfill all the provisions contained in the articles of association, and amendments thereto, and he is bound by them, whether he has actual knowledge of their contents or not."

And on page 22 the same author says:

"When a member has given notice to the association of his intention to withdraw, and after service of the notice the association amends its by-laws, which materially prejudices the claim of the withdrawing member, such amendments are not applicable to the withdrawing member, and in no manner affect his claim. Membership, with all its rights and liabilities, ceases on the service of the notice of intention to withdraw."

It has been held that it is not essential that a person should subscribe the original articles of association. He may become a member after the articles are subscribed and filed, yet he is bound by them as fully as if he had subscribed the original articles of association. Association v. Read, 93 N. Y. 474. It would seem to need no argument to prove so plain a proposition, because, if it were otherwise, only the few who are the incorporators could become members bound by the articles of association and by-laws. If the by-laws had been amended after the plaintiff's notice of withdrawal had been given, no question could be raised that the by-law providing for the payment of claims in the order of the service of the notice of withdrawal would not affect the right of the withdrawing member, for by the act of withdrawal he ceased to be a member, and his rights and liabilities must be measured by the law of the association as it was at the time of his withdrawal. It may be claimed that the statute does not confer the necessary power upon the association to make the by-law. It is certainly a necessary rule to establish that members should be paid according to the priority of notice of withdrawal. The provision of the act authorizing the withdrawal of members provides that "members who have received no loan may withdraw at any time by giving at least one week's notice to that effect. The dues actually paid, together with such accrued profits as the directors may deem prudent for the interest of the association, will be refunded to them when the necessary funds are collected." If no such provision existed, an action at law could be maintained by the last member who served the notice; and the accumulated funds could be taken by him, instead of the diligent one, who had, perhaps, long before served his notice. The design of the statute is that these associations shall continue for the benefit of their members, and to say that a by-law, equitable to all members, designed to promote the continuance of the association, and prevent the accomplishment of the very object of the statute is not a reasonable and proper exercise of the power conferred upon the association, is to hold that the law defeats itself; that such associations are at the mercy of nonborrowing stockholders. I cannot assent to this view of the law, and have no doubt that ample power exists, under the statute, to enact the by-law. If this view is correct, the plaintiff cannot recover, for the obvious reason that there is no fund out of which his claim can be paid, and this fact is the material factor in his right to maintain the action. It is a condition precedent to his right to re-

cover. The association does not agree to refund the money until the necessary funds are collected, and that event has not happened. Consequently, his debt is not due, and no action can be maintained upon a claim until the party has the right to enforce it by judgment and execution. It cannot be said to be a hardship to him. He went into the association, presumably, with the full knowledge of the articles of association and by-laws. His position is not different from the other members. They were only required to pay 10 cents a week on each share. All of the members, probably, understood that their money could not be paid them until it was collected in the manner provided by the statute and articles of association. There is no way in which collections can be enforced by the association against its members more quickly than the law points out. If all may sue and recover judgment without there being a fund, as contemplated by the articles of association, to pay claims, then all may enforce their judgment by execution, or by the appointment of a receiver of the corporation, and thus utterly defeat what was designed by the statute to be a beneficent law, enacted to aid the poor people in acquiring homes, or accumulating out of their savings enough to support them after they can no longer labor to support themselves. This view of the law, that the plaintiff cannot maintain this action, has been held in a number of cases. In one case, the plaintiff, a stockholder of an association, sued to recover the amount which had been paid in on his stock under a law permitting stockholders to withdraw after due notice filed, and to receive the amount paid in, with a proviso that no more than one-third of the funds in the treasury should be appropriated to demands of withdrawing stockholders without the consent of the directors. The court held that the plaintiff could not maintain his action without proving that the necessary funds were in the treasury, and that the directors consented to the application of the fund to the payment of his claim. Association v. Kerr, (Tex. Sup.) 13 S. W. Rep. 1020. I have not been able to see this case reported in full. It is briefly reported in the American Digest for 1890, from which the above statement is taken. In another case, where a building association adopted a rule that, "on and after the expiration of the first twelve months, any member may withdraw the subscription money which he may have contributed, with such an amount of interest as may be determined by the committee. * * * And, should more than one member give notice to withdraw at one time, the members so giving notice shall be paid in rotation, according to the priority of notice; provided, always, that the said society shall not be obliged to make such payments as aforesaid until they have sufficient funds in hand for that purpose, and also to meet the then existing liabilities of the society,"—it was held by the court that where the society was insolvent, and known to be in that condition, at the time of giving the notice of withdrawal, such a rule had no application to the case, but that it did apply to cases maturing before the society was known to be insolvent. In re Sunderland, etc., Bldg. Soc., 24 Q. B. Div. 394. These cases go upon the theory that the conditions contained in the articles of association and by-laws,

when the society will pay, have not arisen, and that such conditions were precedent to the right of withdrawing members to maintain an action. I have examined the case referred to in the plaintiff's brief, (Association v. Silverman, 85 Pa. St. 394.) The statute of that state is similar to our own, but there was no provision in the by-law for priority of notice, as in the case under consideration. The court there held a member might maintain his action. And it was intimated in O'Rourke v. Association, 93 Pa. St. 308, that the judgment might be stayed by the court until funds had accumulated so as to authorize the payment according to the by-laws. I do not think these cases present the law as it is in this state, as they are not in harmony with the spirit of the statute governing these associations. I much prefer to follow the rule adopted in the other cases. It would be a most remarkable condition of things if the 78 members who served notices in this case could maintain actions, and then be stayed by order of the court until such time as the funds provided for by the by-laws of the association had been collected. Nothing would be gained but the accumulation of unnecessary costs and expenses to be borne by the association. I think, therefore, in the absence of any authoritative construction of the statute by the courts of this state, that the interests of all parties concerned will be best conserved, and the object of the statute best attained, by following the law as laid down in the Texas case. The judgment should therefore be affirmed, with costs.