[No. 1460.]

## THE ENTERPRISE BUILDING & LOAN SOCIETY v. BOLIN.

1. BUILDING AND LOAN SOCIETIES—WITHDRAWAL.

Where the by-laws of a building and loan society provide for the with-drawal of members upon sixty days' notice of intention to withdraw, a member giving notice of his intention to withdraw, at the expiration of the term of notice, ceases to be a member of the society as between himself and other shareholders, and becomes a creditor of the society to the amount of the withdrawal value of his stock.

2. SAME.

The withdrawal value of stock in a building and loan society is determined by the by-laws of the society in force at the time of withdrawal and when the notice of withdrawal has been perfected the right of the withdrawing member to payment in accordance with the by-laws becomes a vested right and cannot be affected by subsequent by-laws or action of the society.

3. SAME—REFUSAL TO PAY.

An offer by a building and loan association to pay to a withdrawing member a less sum than he is legally entitled to at the time his notice of withdrawal is complete, is such a refusal to pay the sum actually owing, as would authorize the institution of a suit.

4. SAME—EVIDENCE.

In an action by a withdrawing member against a building and loan society for the withdrawal value of his stock a notice by the society that the money was on hand ready for the payment of his claim was sufficient showing that money from which his claim might be paid was in the treasury of the society at the time his suit was commenced. The society having been in possession of the requisite fund before the commencement of the suit it was not incumbent on plaintiff to show that the fund remained in the treasury at the time but it will be presumed to have remained there subject to his claim under the by-laws.

5. SAME.

Where a member of a building and loan society gave notice of his withdrawal and there were funds on hand to pay his claims, but they disagreed as to the amount due on his stock it was the duty of the society to keep the money subject to his claim till the amount due was determined, and it was no defense to an action against the society on the claim, that the plaintiff had refused to accept a smaller sum offered him and the money had been used for other purposes.

6. SAME—EVIDENCE—ANNUAL REPORT.

In an action against a building and loan society by a withdrawing

member for the withdrawal value of his stock, the annual report
of the society made at the time of his notice of withdrawal show-
ing the value of the stock on the company's books was competent,
relative and material evidence to prove the withdrawal value of
the stock.

7. SAME—INTEREST.

Where a member of a building and loan society gave notice of his with-
drawal and the society having money on hand to pay the withdrawal
value of his stock offered to pay him a smaller sum than the amount
due in settlement of his claim which he refused, he was entitled
to recover interest at the legal rate on the amount due from the
time the society having money on hand refused to pay his claim,
although the by-laws of the society provided that the stock should
not draw interest after notice of withdrawal.

*Appeal from the County Court of Arapahoe County.*

Mr. GEORGE W. TAYLOR, for appellant.

Mr. GUY LeR. STEVICK, for appellee.

THOMSON, P. J.

Appeal from a judgment for $187.10, in favor of Peter
Bolin, and against the Enterprise Building Society, in a
suit by him to recover the withdrawal value of stock in the
society held by him.

On the 6th day of February, 1892, the plaintiff became the
owner of ten shares of stock in the society, on which he made
twenty-two monthly payments of $10.00 each.  On the 27th
day of December, 1893, he gave the defendant notice of
withdrawal, and made no further payments.  On July 17,
1894, the defendant paid him $50.00 on account of his stock.
On January 29, 1896, it issued a notice to him that the money
for his withdrawal claim was ready, and would be paid to
him on return of his pass book and certificate of shares.  It
was also stated in the notice that the amount he would receive
would be $77.50 in cash, or $183.84 in real estate ; and that
if he did not accept the proposed settlement on or before
February 10, 1896, he would lose his place in the list of ap-

VOL. XII—20

plicants for withdrawal, and be placed at the bottom of the list. He did not accept the proposition, and on April 6, 1896, instituted this suit.

A by-law, adopted by the society in 1891, in force when the plaintiff acquired his stock and when he gave notice of withdrawal, and which does not seem ever to have been repealed or amended, provided that any member wishing to withdraw his stock on which no loan was made, should give to the secretary, at a regular monthly meeting of the directors, sixty days' written notice of his intention to withdraw, at the expiration of which time, if the notice was given after the first year of his ownership of the stock, and before the termination of the second, he should receive the full amount paid in, with interest at the rate of six per cent per annum; that the rate of withdrawal should be fixed from time to time by the board of directors, provided, that no interest should accrue on stock, after notice of withdrawal should be filed with the secretary, and provided, that in no event should a member be entitled to receive a greater sum upon withdrawal than his stock should appear to be worth upon the books of the society, less ten per cent; that the stock should also be subject to all fines incurred, and that not more than one half of the income of any one month should be paid for withdrawals without the consent of the board of directors. The proof was that at the time the notice of withdrawal was given, and at the time this suit was instituted, the society was not in possession of the money necessary to pay the plaintiff's claim; but that between those two dates it had sufficient funds applicable to his demand, which, on his failure to respond to the society's notice, were otherwise expended. On January 14, 1896, a committee appointed by the board of directors, recommended that stockholders withdrawing, should receive in cash seventy-five per cent of all moneys paid on dues, or the full amount in real estate, less accrued fines at the rate of one and one fourth per cent per month, and the report was adopted by the board. The defendant's secretary testified that it was in pursuance of this

action of the board that, after deducting the $50.00 theretofore paid, the amount due the plaintiff was fixed at $77.50. The plaintiff offered in evidence a paper which Mr. Richardson, the secretary of the society, identified as the annual report of the society, issued on December 31, 1893. Objection was made by the defendant to its introduction, on the grounds that it was incompetent, irrelevant and immaterial. It was objected to on no other ground, and was admitted. It contains an itemized statement of the receipts, expenditures, resources and liabilities of the society, as found by the auditing committee of the stockholders from an examination of its books. The report also contains the following, in connection with the series in which the plaintiff's stock belonged:

| | |
|---|---|
| Stock, per share, . . . . . | $22 00 |
| Net profit, per share, . . . . . | 4 48 |
| Book value, per share, . . . . | 26 48 |
| Profit per annum, average time, 22 per cent. | |

It will be seen from the foregoing statement, that the then book value of the stock was considerably in excess of the sums paid in, and interest at the rate of six per cent per annum. There was no evidence that, at the time of the plaintiff's withdrawal, he had incurred any fines, or that the amount to which the by-laws would entitle him, was then subject to diminution from any other cause. By an act of the legislature, approved April 17, 1889, shareholders in building associations, having given the requisite notice of their intention to withdraw, become entitled to receive the amount specified by the by-laws, or determined by the board of directors, less all fines and charges, subject to a provision that at no time shall more than one half of the funds in the treasury be applicable to their demands without the consent of the board of directors. Session Laws, 1889, p. 42.

The questions discussed relate to the rights of the plaintiff as a withdrawing shareholder, and the showing which he must make to entitle him to a recovery. As might be expected, counsel for the respective parties disagree upon those ques-

tions, and, without noticing specifically the opposing arguments, we shall examine the questions and state our conclusions. By the terms of the by-law we have mentioned, to enable a member to withdraw, he must give sixty days' notice of his intention in the manner prescribed. At the expiration of the term of notice, his withdrawal is complete, and, as between himself and the other shareholders he ceases to be a member, and becomes a creditor of the association to the amount of his legal claim. *Englehardt v. Saving & Loan Assn.* 25 N. Y. Supp. 835. For the purpose of ascertaining that amount, and when it will be payable, the by-laws, in force at the time must be consulted. It is not questioned here that the requisite notice was given, and when, by the giving of the notice, the plaintiff's withdrawal was perfected, his rights, as against the association, became vested, and he became entitled to payment in accordance with the provisions of the by-laws. Endlich on Building Assn. (2d ed.) § 110 ; *Walton v. Edge,* L. R. 10 App. Cas. 33. Those provisions were that a member withdrawing after the first year of his membership, and before the expiration of the second, should receive the full amount paid in, with interest at six per cent per annum, provided that the sum paid should not exceed the value of his stock as shown by the books of the society, less ten per cent, and that his stock should be subject to all fines incurred. The value of such stock on the books, owing to appreciation of the society's property, or to some other cause, might exceed the amount paid in and interest, much more than ten per cent, in which case payment would be made to him on the basis of that amount and not on the basis of the book value. On the other hand the book value of the stock might be less than the amount paid in, and interest, and in such case the plaintiff's right to payment would be limited to that value, less ten per cent. It is these provisions which must control in calculating and determining the amount to which the plaintiff became entitled on his withdrawal. He was not affected by the action taken by the board of directors in 1896, and he was not bound to receive the sum which, in conformity with that action was

offered to him, if the amount was insufficient. His rights under the by-laws were vested before that time, and it was not competent to the board to take any action by which those rights might suffer prejudice. *Holyoke, etc., Assn. v. Lewis*, 1 Colo. App. 127. If the amount to which he was legally entitled was greater than the amount offered, then the offer of an inadequate sum, in view of the circumstances under which the offer was made, amounted to such refusal to pay the sum actually owing, as would be sufficient to authorize the institution of a suit. However, it is said that by virtue of the provision that the rate of withdrawal should be fixed from time to time by the board of directors, the plaintiff was bound by their action in 1896, fixing a new rate. But at the time of the withdrawal the rate was fixed, and it must be presumed that the withdrawal was made with reference to the rate as it was then established, and notwithstanding the power given to the board to alter the rate, it could make no alteration by which he would be bound after he had acquired a vested right under the existing by-laws, and after, as between himself and the society, he had ceased to be a member, and was no longer subject to its control.

By the terms of the statute concerning building associations, not more than one half of the fund in the treasury should be applied to the demands of withdrawing shareholders without the consent of the board of directors. A limit is thus fixed beyond which the association cannot go. It may make the amount applicable to such demands less, but to increase it in any particular case requires the consent of the board. This provision of the statute was incorporated into the society's by-laws, and it is urged that it was incumbent on the plaintiff to show that when his suit was commenced, money, from which his demand might be paid, was legally in the treasury. We think that in this respect a sufficient showing was made. It was stated in the notice to the plaintiff of July 29, 1896, that the money for his withdrawal claim was then ready, and it was testified by the secretary that the money applicable to the demand was

at that time in the treasury.   It must be presumed that this money had accumulated in the treasury in accordance with the by-law provision we have mentioned, and hence more specific proof on the subject than was made was unnecessary.   The society having, before the commencement of the suit, been in possession of the requisite funds, it was not incumbent upon the plaintiff to show that they remained in the treasury until that time.   By the terms of the by-law the money was payable to him; it was in the treasury for the purpose of being paid to him; he did not receive it because he disagreed with the society as to the amount due him; he was not bound to accept a less sum than he was legally entitled to; it was the duty of the society to retain the money until the dispute should be settled; whatever its custom in that regard may have been, it had no right, as against him, to appropriate the fund to other purposes, and that it did so, and the money was therefore not in the treasury when the suit was instituted, is no defense to his claim.   The annual report of December 31, 1893, was not incompetent, or irrelevant, or immaterial.   It was the act of the society.   It showed the condition of the society's affairs at that time.   It showed the then value upon the society's books of the plaintiff's stock. It contained evidence necessary to a recovery by the plaintiff, and was properly admitted.

We are cited to the case of *Hawley v. Building and Loan Association*, decided by this court, 10 Colo. App. 93, as an authority for the contention that the plaintiff was bound by the action taken by the board of directors on January 14, 1896.   We do not so read the opinion.   In that case, the plaintiff gave the required notice of withdrawal in May, 1893, but because, when the term of his notice expired, he was informed by the secretary that by reason of the number of withdrawal notices which antedated his, it would be impossible to pay his claim, he concluded to continue his membership, and accordingly paid all charges and dues against him until October, 1893.   On the second day of the latter month, the directors adopted a resolution providing for the deduc-

tion from withdrawal values of all fines, charges and losses, incurred before that date. The plaintiff claimed that the resolution was not binding upon him. We held that because he did not rely on his notice of withdrawal, but continued his membership, the amount to which he was entitled should be determined with reference to the resolution of October. By exercising the privileges of a member, he waived the right to insist on the withdrawal value of the stock at the time his notice was given, and remained subject to the future action of the board. But we did not decide that if he had terminated his membership when he gave the notice, he would not have been entitled to the withdrawal value of his stock at the time his notice was complete.

As appears from the evidence, the book value of the plaintiff's stock, less ten per cent, was greater than the amount paid in with interest at the annual rate of six per cent to the time of the notice. He was therefore entitled only to that amount. The defendant's counsel has calculated the interest, and added it to the principal, and fixes the gross sum at $232.10. We assume that his figures are correct. He then deducts the $50.00 which had been paid, and finds a balance of $182.10. The judgment was for $187.10, which sum, he says, even upon the plaintiff's theory, is $5.00 too much. From the time of giving the notice, down to the time when there were funds in the treasury for the payment of the claim, the plaintiff, by the terms of the defendant's by-laws, was entitled to no interest. Until that time the claim was not due. But when the money was on hand, and payment refused, then the claim was no longer subject to the provisions of the by-laws. If the defendant had made payment then, the principal sum, as ascertained in accordance with the by-laws, would have been all that the plaintiff could have required. But if the defendant willfully withheld the money after it was due, then, by the law of the land, a liability for interest was incurred. The suit was brought on the 6th day of April, 1896, and judgment was rendered on the 28th day of November, 1896. The plaintiff was entitled to interest, at least from

the time of the commencement of the suit, and, at the legal rate, when judgment was rendered, it would amount to considerably more than $5.00. We find no error which would authorize a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

### ON PETITION FOR A REHEARING.

PER CURIAM. A petition by the appellant for a rehearing, suggests some objections to the opinion, which, for the purpose of preventing any possible misconception of our meaning, we shall briefly notice. First. The opinion does not say directly or inferentially, that withdrawing members shall not be chargeable with their share of the losses incurred by the society prior to the service or perfecting of their respective notices of withdrawal. In this case it did not appear that prior to the plaintiff's notice of withdrawal there were any losses, the question of such losses was not in the case, and in respect to the liability of withdrawing members for losses, the opinion is, in no respect, inconsistent with the opinion in *Hawley v. Building and Loan Association, supra.* Second. The society's by-law to which we referred, fixed the rate of withdrawal, and until, in accordance with its provisions, another rate should be fixed by the board of directors, withdrawing members would be settled with on the basis of the rate fixed by the by-law, and that was the only rate in force when the plaintiff withdrew. The value, at that time, of the stock, as shown by the company's books, appeared from the report of December 31, 1893. The secretary of the society, as a witness, identified that paper as the annual report of the society. His testimony fixed the character of the document, and it being the act of the society, the society was bound by it. The only grounds of objection to it were that it was incompetent, irrelevant and immaterial. But it was competent, because it was the society's own statement, and it was relevant and material, be-

cause it showed the book value of the stock. In the *Hawley* case it was sought to prove the withdrawal value of the stock by printed notices purporting to give such value, posted in the office of the defendant, but the defendant denied that it authorized the notices, or was responsible for them, and the plaintiff offered no evidence to connect the defendant with them. There was a complete failure of proof to fasten upon the defendant any responsibility for the notices, and we held that such proof was indispensable. That case and this differed in their facts, but in so far as like principles may be applicable to both, the doctrine announced in each is the same.

The petition for a rehearing will be denied.